

# NUMBER 13-07-00382-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| THE STATE OF TEXAS, | Appellant, |
|---|---|
| v. | |
| RODOLFO DELGADO, | Appellee. |

## On appeal from the 139th District Court of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Benavides
### Memorandum Opinion by Justice Benavides

The State of Texas appeals an order dismissing a two-count indictment against appellee, Rodolfo Delgado, charging him with evading arrest and misuse of official information.  *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a) (Vernon Supp. 2008); TEX. PENAL CODE ANN. §§ 38.04, 39.06 (Vernon 2003).  By two issues,[1] the State argues that

---

[1] By issue one, the State argues that Delgado failed to meet his burden to prove vindictive prosecution and that the State abused the grand jury process.  By issue two, the State argues that Delgado failed to prove a selective prosecution claim.

the trial court erred by granting Delgado's "Motion to Dismiss Indictment for Outrageous Government Conduct," in which Delgado argued, among other things, that he was indicted in retaliation for filing a civil suit against the City of Edinburg and several of its police officers. We affirm.

## I. BACKGROUND[2]

On September 21, 2002, Delgado was arrested for driving while intoxicated ("DWI") and for evading arrest.[3] Officer Edgar Rivas, a patrolman with the City of Edinburg Police Department, conducted the traffic stop and the arrest. Officer Rivas transported Delgado to the police department where Delgado was "booked" and his personal effects catalogued. A "booking sheet" was filled out, and it did not indicate whether Delgado had any money on his person at the time of the arrest. Officer Rivas, however, acknowledged that Delgado did have money in his wallet. The parties dispute whether this money was returned to Delgado when he was released from police custody. Delgado complained about the missing money by filing a motion in his prosecution for DWI. No criminal investigation was performed by the police department, and no action was taken in the DWI prosecution to return the allegedly missing money.

Additionally, at the time of the arrest, the police dispatcher ran a criminal history background check on Delgado. The criminal history that was reported by the department of public safety in Austin, Texas, indicated that Delgado had been arrested and convicted

---

[2] As noted above, this appeal arises from the trial court's dismissal of a two-count indictment against Delgado. The facts and testimony recited herein are derived from hearings the trial court held over several days on Delgado's motion to dismiss the indictment.

[3] Delgado's DWI charge was dismissed on speedy trial grounds on January 24, 2005, and the dismissal was affirmed by this Court. *See State v. Delgado*, No. 13-05-00083-CR, 2007 WL 2199642 (Tex. App.–Corpus Christi Aug. 2, 2007, pet. ref'd).

on three prior occasions for DWI and had been arrested once for "family offenses," although these offenses were not described in detail. Officer Renee Hernandez, a police officer with the Edinburg Police Department, incorporated this information into a supplemental offense report. At some time in 2002, Delgado obtained this report, although it is disputed how the report came into Delgado's possession. Delgado contends, and the State does not contest, that the information contained in this report referred to another person with the same name as Delgado.

On November 13, 2002, Officer Rivas appeared before a grand jury to present testimony regarding Delgado's alleged attempt to evade arrest on September 21, 2002. Officer Rivas detailed the traffic stop and arrest to the grand jury. Sofia Arizpe, the assistant district attorney in charge of presenting cases to grand juries in Hidalgo County at that time, testified that Delgado also appeared before the grand jury in 2002. Arizpe stated that Delgado told the grand jury that he had received the supplemental offense report with the false criminal history information. She explained that offense reports are not public information if there is a criminal investigation pending and that criminal defendants are not entitled to possess the supplemental offense report until trial. Although Arizpe knew that Delgado should not have access to that document, she admitted she did not confiscate it, and no charges were brought as a result of Delgado's possession of the supplemental police report.

The 2002 grand jury returned a no-bill on the evading arrest charge. *See* TEX. CODE CRIM. PROC. ANN. art. 20.19 (Vernon 2005) (providing that nine members of the grand jury must concur in finding the bill). After the grand jury failed to indict him, in September 2004,

3

Delgado filed a civil suit in federal court against Officer Rivas and others.[4] Delgado alleged that Officer Rivas stole money from him on the night he was arrested and verbally and physically abused him. Delgado attached the supplemental police report as an exhibit to his civil complaint, claiming that the police department had fabricated the criminal history information as part of an alleged conspiracy against him.

In December 2004, after Delgado filed his civil suit, Arizpe was conducting proceedings before another Hidalgo County grand jury. Arizpe testified that at that time, the grand jury was not considering an indictment against Delgado, nor was any criminal investigation pending with the District Attorney's office. Arizpe testified, however, that on December 8, 2004, she received a phone call from an attorney she identified as Robert Rex Williams, informing her that Officer Rivas wished to speak to the grand jury about Delgado. She could not recall who Williams said he represented. Arizpe stated that she asked the grand jury if they would like to hear from Officer Rivas, and the grand jury consented.

Officer Rivas explained that he had heard that the first grand jury had returned a no-bill against Delgado and that a second grand jury had convened. Although Officer Rivas at first claimed that he "may have" spoken to his lawyer about appearing before the grand jury, he later admitted that he had called to ask his attorney for advice because he heard a second grand jury had been empaneled, and he wanted to appear.

---

[4] The record does not contain a copy of the civil complaint. However, Officer Rivas described the civil suit in his testimony before the grand jury on December 9, 2004. He testified that the lawsuit was filed against him, other members of the police department, the City of Edinburg Police Department, the mayor of Edinburg, and the Edinburg City Manager. Officer Rivas believed the civil suit alleged civil rights violations, including that Officer Rivas verbally and physically abused Delgado and stole money from him while in police custody. It further alleged that the police department and its members "conspired against [Delgado] to get him in trouble, basically." The State does not dispute Officer Rivas's characterization of the civil suit.

When asked why he wanted to appear, Officer Rivas explained that he "was not happy with the first outcome" and believed he could "go and get a second chance." He clarified that he was unhappy that the first grand jury had failed to indict Delgado. He conceded that by the time he testified before the second grand jury, Delgado had sued him civilly, but he denied that the civil suit was the reason he approached the second grand jury to testify against Delgado. He claimed he did not believe that appearing before the grand jury would help him in the civil suit. Instead, he claimed he was merely seeking "justice." He admitted that he did not have any new evidence to present against Delgado.

On the contrary, Arizpe testified that initially, she believed that Officer Rivas wanted to appear before the grand jury because he had been sued by Delgado:

[Defense counsel]: But you're telling us today under oath that [Officer Rivas] was upset because of allegations of misconduct in that lawsuit and that's why he wanted to be there?

[Arizpe]: That was—when this case was originated that was my understanding.

[Defense counsel]: All right.

[Arizpe]: Okay. And I thought that it was not towards the end of his testimony. Because I understood when he spoke to me that he was upset because the offense report was being used to sue him on this matter. So when I entered the grand jury room, I entered the grand jury room with an understanding that that's going to be the key issue right there. And that's why I had asked him—okay, tell me what it is you're complaining about? Because all along—you know, when he goes into the grand jury and then he starts talking about the evading again. And I thought towards the end—I asked him again, you know, about the other information with reference to the lawsuit because I thought that's what it was about.

Officer Rivas and several others testified before a grand jury on December 9, 2004,

5

and again on February 17, 2005. Officer Rivas again testified in detail about the 2002 traffic stop and also about the civil lawsuit Delgado filed against him. Arizpe questioned several police officers from the Edinburg Police Department about how Delgado came into possession of the supplemental offense report that was attached to Delgado's civil petition.

The grand jury asked Arizpe to prepare an indictment of all possible charges, and she prepared a two-count indictment including evading arrest as Count 1 and misuse of official information as Count 2. She testified that Delgado's possession of the supplemental police report was the basis for the charge of misuse of official information in Count 2. The grand jury returned a true bill and presented the indictment as prepared by Arizpe.

The district attorney's office pursued the prosecution against Delgado, and before trial, Delgado filed a "Motion to Dismiss Indictment for Outrageous Government Conduct." He alleged that the indictments were sought in retaliation for the exercise of his constitutional right to seek redress for the injuries he suffered by filing the civil lawsuit, and thus, the indictment constituted vindictive prosecution in violation of his due process rights. After hearing testimony and arguments over several days, visiting judge Joaquin Villarreal granted the motion as to both counts of the indictment. This appeal ensued.

## II. APPLICABLE LAW

It is well settled that prosecutors enjoy "broad discretion in deciding which cases to prosecute," and it is presumed that prosecutors exercise that discretion in good faith. *Neal v. State,* 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). However, "a decision to prosecute violates due process when criminal charges are brought in retaliation for the defendant's exercise of his legal rights." *Id.* Thus, the presumption that a prosecution was undertaken

6

in good faith gives way when the defendant proves "prosecutorial vindictiveness"—that the charges were brought in retaliation for the exercise of a protected legal right. *Id.*

Prosecutorial vindictiveness may be established by showing either: (1) "proof of circumstances that pose a 'realistic likelihood' of such misconduct sufficient to raise a 'presumption of prosecutorial vindictiveness,' which the State must rebut or face dismissal of the charges"; or (2) proof of "'actual vindictiveness'—that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right." *Id.* (citing *United States v. Goodwin,* 457 U.S. 368, 380-81 (1982); *United States v. Johnson,* 171 F.3d 139, 140-41 (2d Cir.1999)). When a presumption of vindictiveness applies, the burden shifts to the State to justify its conduct with "objective evidence in the record" explaining the prosecutor's decision, and this explanation must be independent from the defendant's exercise of his legal rights. *Id.* at 174. "The trial court decides the issue based upon all of the evidence, pro and con, and the credibility of the prosecutor's explanation." *Id.*

When the defendant's evidence does not invoke the presumption, however, the defendant bears the burden to establish "actual vindictiveness" by presenting "objective evidence" that "the prosecutor's charging decision was a 'direct and unjustifiable penalty' that resulted 'solely from the defendant's exercise of a protected legal right.'" *Id.* (quoting *Goodwin*, 457 U.S. at 384 & n.19). This is a very difficult burden that is rarely, if ever, met. *Goodwin*, 457 U.S. at 384 n.19.

### III. DISCUSSION

Delgado argues that the presumption of vindictiveness applies to this case, and it required the State to put forth an objective explanation for its actions, which he claims the

State failed to do. In the alternative, Delgado argues that there is objective evidence establishing actual vindictiveness. The State, on the other hand, argues that this is not the type of case to which a presumption of vindictiveness can be applied. Furthermore, the State argues that there is no evidence of actual vindictiveness.

## A.     Does the presumption apply?

The State argues that a presumption of vindictiveness applies only when the State pursues increased charges or an enhanced sentence after a defendant successfully appeals a conviction and obtains a new trial. In other words, the State believes that the only "right" protected by the due process clause in these circumstances is the right to an appeal. We disagree.

In *United States v. Goodwin,* the Supreme Court considered whether to apply a presumption of vindictiveness in a pre-trial setting. *Id.* at 372-85. In that case, the defendant was charged with a misdemeanor and exercised his right to a jury trial. *Id.* at 370-71. Thereafter, the prosecutor obtained a felony indictment against the defendant for the same conduct. *Id.* at 371. After the defendant was convicted, he moved to set aside the verdict, alleging that the felony charge gave the appearance of vindictive prosecution because it punished him for exercising his right to a jury trial. *Id.*

The Court summarized its prior case law and clarified the circumstances under which it will apply a presumption of vindictiveness. *Id.* at 372-85. Because of the difficulty of discerning motives, the Court noted it is necessary to imply improper motives in certain circumstances where a prosecution follows the exercise of a legal right, even though an actual vindictive motive may not exist. *Id.* at 373.

When determining whether to apply a presumption of vindictiveness, the Court has

8

considered many different factors, but the ultimate determination is always based on whether there is a realistic likelihood of vindictiveness. *Id.* at 384. The *Goodwin* Court focused on two factors in particular. First, while not dispositive, the Court has looked at whether "opportunities" for vindictiveness exist in the prosecutorial decision-making process, including whether the prosecutor has a "stake" in the prosecution. *Id.* at 376 (quoting *Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974)). For example, in *Blackledge*, the Court determined that the prosecutor had a significant stake in deterring the exercise of an appeal by a defendant, which would increase expenditures of resources by the prosecution and could result in a previously convicted defendant going free. *See id.* (citing *Blackledge*, 417 U.S. at 27-28). The Court referred to this justification as "institutional bias inherent in the judicial system against the retrial of issues that have already been decided." *Id.*

Additionally, in the pre-trial setting, the Court has considered whether the accused was on equal footing with the prosecution at the time the procedural or legal right was raised. For example, in *Bordenkircher*, the Court considered whether to apply a presumption of vindictiveness to a prosecution's decision to pursue additional charges after the defendant refused to plead guilty to the charged offense. *Id.* at 377 (citing *Bordenkircher v. Hayes,* 434 U.S. 357, 362 (1978)). The Court held that the equality of bargaining power in the plea negotiation process distinguished the case from the Court's earlier decisions, which had involved unilateral charging decisions by the prosecution. *Id.* at 377-78 (citing *Bordenkircher,* 434 U.S. at 362). The Court in *Bordenkircher* explained that the "due process violation . . . 'lay not in the possibility that a defendant might be deterred from the exercise of a legal right . . . but rather in the danger that the State might

9

be retaliating against the accused for lawfully attacking his conviction.'" *Id.* at 378 (quoting *Bordenkircher,* 434 U.S. at 363). Because the accused is free to reject the plea bargain, the Court held there was no threat of "punishment" for refusing to plead guilty. *Id.* The Court in *Goodwin* noted that the decision in *Bordenkircher* was based on the Court's acceptance of plea negotiation as a legitimate process. *Id.*

Applying its prior precedent, the Court in *Goodwin* declined to apply a presumption of vindictiveness. *Id.* at 380-81. First, it noted that during pre-trial proceedings, the "prosecutor's assessment of the proper extent of prosecution may not be crystallized," whereas once a trial has been conducted, it is much more likely the State has completed its evaluation. *Id.* at 381. Thus, it is more likely that a change in the charging decision made after an initial trial was based on vindictive reasons. *Id.*

Second, the Court expected that defendants will exercise procedural rights before trial that "inevitably impose some 'burden' on the prosecutor." *Id.* For example, defendants routinely file pretrial motions to suppress evidence, request access to government files, and request a trial by jury. *Id.* Thus, the Court held that the timing of a prosecutor's actions in the pre-trial setting in that case, after a defendant requested a jury trial, did not warrant a presumption of vindictiveness. *Id.*

This case is certainly different from the facts in *Goodwin* and the cases discussed therein, and it presents a unique set of circumstances. *See id.* In fact, we have located an identical fact pattern in only one Texas court of appeals opinion. In *Neal v. State*, the Texarkana Court of Appeals faced a situation where the defendant was initially charged with possession of a weapon while incarcerated in the Rusk County jail. *See* 117 S.W.3d 301, 306-08 (Tex. App.–Texarkana 2003), *rev'd on other grounds*, 150 S.W.3d 169 (Tex.

10

Crim. App. 2004). That charge was dismissed. *Id.* The defendant then brought a civil lawsuit against Rusk County based on actions taken against him while he was in jail. *Id.* After the defendant won that lawsuit, the prosecutor reindicted the defendant for the same crime. *Id.*

The court of appeals noted that the most common scenario raising a claim of vindictive prosecution involves re-prosecutions or re-indictments following successful appeals. *Id.*; *see Ortegon v. State,* 267 S.W.3d 537, 540-42 (Tex. App.–Amarillo 2008, pet. ref'd). The court noted that although the facts did not "fit neatly with most prosecutorial vindictiveness cases," the filing of more serious charges after the exercise of a procedural right invokes the presumption of vindictiveness. *Neal,* 117 S.W.3d at 308. The court held that the defendant "went from having no charge to the new indictment at this critical point," and found the new indictment "analogous to the 'more serious charge' concept," which "invokes the presumption of vindictiveness." *Id.*

While *Neal* lacks analysis in some respects, we believe the holding is sound, and its logic has not been examined or rejected by the Texas Court of Criminal Appeals. *Id.*; *see Neal*, 150 S.W.3d at 180 (holding that defendant failed to preserve issue of vindictive prosecution without addressing the merits of the argument). Applying the principles in *Goodwin*, we hold that a realistic likelihood of vindictiveness exists based on these facts. First, there is an opportunity for vindictiveness, given that the State has a stake in the outcome of the civil litigation. The State relies on its police officers to perform investigations into criminal matters, and it is certainly in the State's best interest if its investigators are not distracted by civil suits based on those investigations. Thus, while we are not holding that the State actually sought to deter Delgado from pursuing his civil suit

11

by seeking an indictment, the opportunity to do so existed.

Second, the State is not on equal footing with the accused in these circumstances. The outcome of the criminal case can certainly affect the outcome of the civil litigation, particularly if the charges result in a felony conviction of the civil plaintiff. A felony conviction could be used to impeach the civil plaintiff's credibility. *See* TEX. R. EVID. 609(a) (allowing impeachment of a witness by felony conviction). No such consequence flows against the civil defendants or the State.

Third, this case is not similar to *Goodwin*, where the defendant asserted his right to trial by a jury, which is an important right, but is nevertheless a routine procedural maneuver in criminal cases. *Goodwin*, 457 U.S. at 381. While we perceive some risk that a criminal defendant could file a civil lawsuit before an indictment is presented, we believe that such a risk is de minimus, particularly given the existing remedies for frivolous lawsuits. *See, e.g.*, TEX. R. CIV. P. 13. Allowing a presumption of vindictiveness in these circumstances would not impede prosecutions because the filing of a civil suit is not a routine procedural maneuver in criminal cases.

Here, the first grand jury was asked to indict Delgado for evading arrest, and it returned a no-bill. Even though the district attorney was aware that Delgado possessed the supplemental offense report and that such possession may be improper, no charges were brought. Thereafter, the district attorney's office did not pursue additional charges against Delgado on any grounds. Delgado asserted that he was verbally and physically assaulted by Officer Rivas and that money was taken from him during his arrest. He also alleged that the Edinburg Police Department fabricated the criminal history as part of a conspiracy against him. He sought a remedy for these injuries by filing a civil suit against

12

Officer Rivas and others. *See Ca. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972) (holding that an individual's right of access to courts is protected by the First Amendment's clause granting an individual's right to petition the government for grievances); *Russoli v. Salisbury*, 126 F. Supp. 2d 821, 854 (E.D. Pa. 2000). Shortly thereafter, Officer Rivas approached the grand jury and sought a second chance to indict Delgado, and Delgado was indicted based on Officer Rivas's testimony. The State then proceeded with the prosecution.

We hold that the trial court properly applied a presumption of vindictiveness.[5] We pause to note, however, that when a court applies a presumption of vindictiveness, it is by no means making a determination that there was actual vindictiveness, which is an entirely separate inquiry. *Raetzsch v. State,* 709 S.W.2d 39, 40 (Tex. App.–Corpus Christi 1986, pet. ref'd) ("[T]he task of the reviewing court is to analyze the appearance of vindictiveness from the facts of each case, not to inquire into the motives of the prosecutor."). The same is true here—we express no opinion, and we do not intend to imply, that the State actually harbored ill will towards Delgado. The presumption exists to protect defendants from the mere *appearance* of an unconstitutional prosecution. *See United States v. Jenkins*, 504 F.3d 694, 700 (9th Cir. 2007) ("The mere appearance of prosecutorial vindictiveness suffices to place the burden on the government because the doctrine of vindictive

---

[5] Almost as an afterthought, the State suggests that Delgado is not entitled to the presumption because he "never attempted to prove and never even argued that this presumption applied to his case." We note that the State does not explain this argument and does not support it with any authority. In fact, the Texas Court of Criminal Appeals has noted that if a defendant raises a due process argument based on vindictive prosecution in a pre-trial motion to dismiss, this motion is sufficient to put the State on notice that it must rebut the claim. *See Neal v. State*, 150 S.W.3d 169, 179 (Tex. Crim. App. 2004). Delgado filed a proper pretrial motion raising this issue. In his brief in support of his motion to dismiss, Delgado argued that "this case smacks of retaliation, collusion, and conspiracy between the defense civil lawyers and the district attorney's office to deprive defendant of his constitutional rights and therefore have a 'chilling effect' on the exercise of defendant's right to due process and other rights afforded to any citizen of the United States of America." This argument was sufficient to preserve the right to rely on the presumption.

13

prosecution 'seek[s] to reduce or eliminate apprehension on the part of an accused' that she may be punished for exercising her rights."). Delgado presented evidence raising a realistic likelihood of vindictiveness, creating the appearance of an unconstitutional prosecution. Having found that the presumption applies, we now discuss whether the State met its burden to rebut that presumption.

## B. Did the State rebut the presumption?

Once the presumption is invoked, the State bears the burden to rebut the presumption with an explanation of the charges "'that is unrelated to the defendant's exercise of his legal right . . . .'" *Hood v. State*, 185 S.W.3d 445, 448 (Tex. Crim. App. 2006) (quoting *Neal*, 150 S.W.3d at 173-74). An objective explanation is required. *Id.* at 450. For example, the Texas Court of Criminal Appeals has held that "mistake or oversight" in failing to initially charge a defendant with a crime is a sufficient justification, especially "when . . . a prosecutor does not merely deny his state of mind was motivated by vindictiveness." *Id.* A subjective denial by the prosecution that a vindictive motive was present is insufficient to rebut the presumption. *See id.*[6]

The State argues that Delgado's theories are negated by Officer Rivas's testimony at the hearing on Delgado's motion. First, the State argues that Officer Rivas testified that he initiated his appearance before the second grand jury because he felt that justice had not been served when the first grand jury refused to indict Delgado. Clearly, this is a subjective explanation that is insufficient to rebut the presumption of vindictiveness. Even if it could be construed as objective, however, Arizpe testified that when Officer Rivas

---

[6] In *Hood*, the court of criminal appeals noted that "subjective" means "'[o]f, produced by, or resulting from an individual's mind or state of mind' or 'existing only in the mind.'" *Hood v. State*, 185 S.W.3d 445, 450 n.15 (Tex. Crim. App. 2006) (citing Webster's II New College Dictionary 1098 (1995)).

14

initiated the second grand jury investigation, she believed he was asking to testify before the grand jury because he was upset about the civil lawsuit Delgado filed against him. The trial court was entitled to weigh the credibility of Officer Rivas's testimony and discount his testimony, particularly in light of Arizpe's opinion about Officer Rivas's motive. *Neal,* 150 S.W.3d at 173-75. Thus, we hold that Officer Rivas's explanation alone was insufficient to rebut the presumption.

Second, the State asserts that at the time the second grand jury was empaneled, the district attorney's office was no longer investigating any further charges against Delgado, and it was Officer Rivas who initiated the proceedings against him. In other words, the State disclaims responsibility for initiating the prosecution and places the responsibility on Officer Rivas. However, "[b]ecause both the State and the law enforcement authorities participate on the side of the State in a joint effort to convict defendants, a suggestion from parties connected with the State coming after the legal proceeding dismissing the charge could not be considered as a factor negating the vindictiveness presumption." *Neal*, 117 S.W.3d at 309. The State cannot disclaim responsibility for the prosecution by shifting the blame to Officer Rivas, on which it clearly relied to investigate the alleged offenses. Moreover, the State, not Officer Rivas, pursued the prosecution after the indictment. Given that the presumption of vindictiveness seeks to prevent the appearance of an unconstitutional prosecution, this justification is insufficient. Accordingly, we hold that neither of the State's proposed justifications is sufficient to rebut the presumption of vindictiveness.[7]

---

[7] The presumption of vindictiveness applies in this case to both counts of the indictment, even though the misuse of official information charge was not pursued initially in 2002. The presumption arises not just when a prosecutor re-indicts an individual on the same charges that were pending before the individual's exercise of a legal right, but also when new and different charges are brought. *See United States v. Krezdorn,*

15

Because we have held that the presumption of vindictiveness applies and the State has not rebutted the presumption, we hold that the trial court did not err in granting Delgado's motion to dismiss the indictments. We need not address Delgado's argument that the evidence showed "actual vindictiveness," and we express no opinion on that issue. *See* TEX. R. APP. P. 47.1. We also need not address the remaining arguments under the State's first and second issues. *See id.*

## IV. CONCLUSION

We affirm the trial court's judgment dismissing the indictment.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 4th day of June, 2009.

---

693 F.2d 1221, 1228-31 (5th Cir. 1982). However, the "distinction between substituting more serious charges and adding new charges is relevant in determining what type of explanation on the prosecutor's part will be regarded as sufficient to rebut a presumption of prosecutorial vindictiveness." *Id.* For example, when new information becomes available justifying further prosecution, that information may suffice as an "objective" explanation of the later prosecution. *See Raetzch v. State*, 709 S.W.2d 39, 41-42 (Tex. App.–Corpus Christi 1986, pet. ref'd) (holding that prosecutor's later decision to reindict defendant with enhancement was justified because it was based on receiving a "pen pack" that supported enhancement). We note that the State has not argued that its prosecution was justified because new information was obtained involving Delgado's alleged misuse of official information or evasion of arrest. Officer Rivas acknowledged that when he testified before the second grand jury, he did not have any additional evidence regarding the evading arrest charge, and the State does not argue otherwise. And with respect to the charge of misuse of official information, the grand jury indicted Delgado under Texas Penal Code section 39.06(c), which only required the State to prove that Delgado solicited or received the confidential information with the intent to obtain a benefit. *See* TEX. PENAL CODE ANN. § 39.06(c) (Vernon 2003). Arizpe conceded that she was aware that Delgado possessed the supplemental offense report when he testified before the 2002 grand jury, but no action was taken. The State has not argued that the facts underlying the charge of misuse of official information were not fully developed at that time or that new information justified its prosecution of Delgado for that charge.

16