IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1559-03






RONNIE JOE NEAL, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


RUSK COUNTY





 Cochran, J., delivered the opinion of the Court in which Keller, P.J.,
Meyers, Keasler, Hervey and Holcomb, JJ., joined. Womack, J., filed a dissenting
opinion in which, Price and Johnson, JJ., joined.


O P I N I O N 


 

 After a court trial, a judge found appellant guilty of possession of a deadly weapon
in a penal institution and sentenced him to six years' imprisonment. The court of appeals
reversed this conviction and ordered the case dismissed. It concluded that appellant's
prosecution-which came after he filed a federal civil-rights suit-raised a presumption of
vindictiveness that the State did not overcome at trial. (1) The State asks whether the court of
appeals erred by reversing the trial court's judgment on a theory of prosecutorial
vindictiveness when that theory was never properly presented to the trial court. (2) We hold that
it did err when it reversed the trial court's judgment on a basis never pleaded, proved, or
ruled upon in the trial court. We therefore reverse the court of appeals and affirm the
judgment of the trial court.

I.


 During the summer of 1998, appellant was in the Rusk County jail awaiting trial on
charges of forgery and burglary of a habitation. On June 16, 1998, the local jailers caught
him with a homemade weapon-a toothbrush sharpened into a stabbing instrument-which he
had secreted in his boxer shorts. On July 17, 1998, appellant pleaded guilty, pursuant to a
plea bargain, to both the forgery and burglary charges. On September 9, 1998, he was
indicted for possession of a deadly weapon in a penal institution, stemming from the June
16th incident. Appellant filed a federal civil-rights lawsuit against Rusk County on May 20,
2000, alleging mistreatment in the jail. Before trial in the civil-rights suit, appellant and the
State negotiated a plea bargain for a two-year sentence on the pending weapons charge. 
Appellant-who was by then in prison serving his burglary sentence-was bench-warranted
back to Rusk County for a plea on the weapons charge. But before that plea hearing could
take place, Rusk County officials returned appellant to prison because they learned he was
HIV positive. Thus, on November 17, 2000, the State dismissed the weapons charge with
a notation that "[t]he defendant was convicted in another case." 

 On February 28, 2001, the federal district court conducted a one-day trial on
appellant's civil rights suit. Appellant testified and admitted that he had possessed the
homemade weapon in the Rusk County jail. No ruling was made on that date in the federal
trial. On March 6, 2001, six days after the federal hearing, the State-at the behest of the
Rusk County Sheriff's Office, which had first learned about the dismissal of the weapons
charge at the civil-rights trial-re-indicted appellant on the weapons charge. (3) Appellant
learned on April 18, 2001, that the federal district judge had awarded him a $6,000 judgment
against Rusk County in the civil-rights suit. (4) 

 The State declined to re-offer its original two-year plea bargain on the weapons case. 
After the trial court denied his pretrial motions (none of which claimed prosecutorial
vindictiveness), appellant waived a jury and requested a court trial. After hearing the State's
evidence, the trial court found appellant guilty.

 At the punishment hearing, the State put on evidence of: 1) appellant's previous
forgery and burglary convictions; 2) appellant's penitentiary packet, which listed four other
convictions-one robbery, two burglaries, and one unauthorized use of a motor vehicle; and
3) letters appellant wrote to his girlfriend while in the Rusk County jail in which he asked
for her assistance in smuggling a handgun into the jail so he could escape and in obtaining
documents to create a new identification after he escaped.

 The defense presented evidence that, before trial on the federal civil-rights case, the
State and appellant had negotiated a plea bargain for a two-year sentence, but that the State
was unwilling to re-offer that bargain after the federal trial. The defense characterized the
re-indictment as unfair and retaliatory and asked the trial court to assess the original agreed-to two-year sentence. Appellant's attorney, in closing, stated: "Now, this man here, I think
to resolve this issue, he's in agreement, his sister's in agreement, I'm in agreement, punish
him with the original two years that everybody thought was right." In its closing, the State
asked the court "to review all of the evidence that was introduced today, review the
seriousness of the crime, review his criminal record and issue the appropriate sentence."

The trial court assessed punishment at six years in prison.

 In his brief to the court of appeals, appellant alleged, for the first time, that his
conviction should be reversed and the case dismissed because it "was in violation of his
rights under the Due Process Clause of the Fourteenth Amendment because of prosecutorial
vindictiveness." He stated that "[t]he prosecutor in this case acted in bad faith and
maliciously by re-indicting [him] a second time" and that "there was no other reason except
for revenge and retaliation for the prosecutor to pursue a second indictment."

 The court of appeals agreed and held that the sequence of events ("the State dismissed
Neal's charge completely, the civil suit was heard, and then the State re-filed the same
charge") raised a presumption of vindictiveness and that there was no evidence in the trial
record to overcome it. (5) It reversed the trial court's judgment and dismissed the indictment. 
II.


 Both Texas and federal courts recognize that prosecutors have broad discretion in
deciding which cases to prosecute. Thus, "[i]f the prosecutor has probable cause to believe
that the accused committed an offense defined by statute, the decision whether to prosecute
and what charge to file generally rests entirely within his or her discretion." (6) Courts must
presume that a criminal prosecution is undertaken in good faith and in nondiscriminatory
fashion to fulfill the State's duty to bring violators to justice. (7) Nevertheless, a decision to
prosecute violates due process when criminal charges are brought in retaliation for the
defendant's exercise of his legal rights. (8) Thus, the Supreme Court has held that, under
specific, limited circumstances, the presumption that a prosecution is undertaken in good
faith gives way to either a rebuttable presumption of prosecutorial vindictiveness or proof
of actual vindictiveness. (9) 

 A constitutional claim of prosecutorial vindictiveness may be established in either of
two distinct ways: 1) proof of circumstances that pose a "realistic likelihood" of such
misconduct sufficient to raise a "presumption of prosecutorial vindictiveness," which the
State must rebut or face dismissal of the charges; (10) or 2) proof of "actual vindictiveness"-
that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty
resulting solely from the defendant's exercise of a protected legal right. (11) 

 Under the first prong, if the State pursues increased charges or an enhanced sentence
after a defendant is convicted, exercises his legal right to appeal, and obtains a new trial, the
Supreme Court has found a presumption of prosecutorial vindictiveness. (12) In the very few
situations in which this presumption does apply, it can be overcome by objective evidence
in the record justifying the prosecutor's action. (13) The defendant must prove that he was
convicted, he appealed and obtained a new trial, and that the State thereafter filed a greater
charge or additional enhancements. The burden then shifts to the prosecution to come
forward with an explanation for the charging increase that is unrelated to the defendant's
exercise of his legal right to appeal. (14) The trial court decides the issue based upon all of the
evidence, pro and con, and the credibility of the prosecutor's explanation. (15)

 Under the second prong, when the presumption does not apply, the defendant may still
obtain relief if he can show actual vindictiveness. (16) To establish that claim, a defendant must
prove, with objective evidence, that the prosecutor's charging decision was a "direct and
unjustifiable penalty" that resulted "solely from the defendant's exercise of a protected legal
right." (17) Under this prong, the defendant shoulders the burden of both production and
persuasion, unaided by any legal presumption. (18) Once again, the trial judge decides the
ultimate factual issue based upon the evidence and credibility determinations. 

 Under either prong, "[i]f the defendant is unable to prove actual vindictiveness or a
realistic likelihood of vindictiveness, a trial court need not reach the issue of government
justification." (19) That is, the State may stand mute unless and until the defendant carries his
burden of proof under either prong.

III.


 Appellant Forfeited His Prosecutorial Vindictiveness Claim Because He
Failed to Comply with Texas Rule of Appellate Procedure 33.1(a).


 In this case, appellant never filed a motion to dismiss or quash the indictment based
on a claim of prosecutorial vindictiveness. Even at trial, he never argued that his due-process
rights had been violated by the re-indictment. As the State Prosecuting Attorney points out,
the evidence that the court of appeals relied upon to find prosecutorial vindictiveness was not
presented at the hearing on appellant's pretrial motions. Instead, it was presented at the
sentencing hearing after he had been found guilty. Even then, appellant offered this evidence
solely in mitigation of punishment, not to support a legal due-process claim requiring
dismissal of the indictment. (20) 

 Texas Rule of Appellate Procedure 33.1 provides that, in general, as a prerequisite to
presenting a complaint for appellate review, the record must show a timely, specific objection
and a ruling by the trial court. "Except for complaints involving systemic (or absolute)
requirements, or rights that are waivable only ... all other complaints, whether constitutional,
statutory, or otherwise, are forfeited by failure to comply with Rule 33.1(a)." (21)

 In this case the trial court neither disregarded an absolute requirement (such as
jurisdiction over the subject or person), nor denied appellant a waivable-only right (such as
the right to counsel or a jury trial), so the only issue is whether appellant complied with Rule
33.1(a). He did not. Appellant's prosecutorial "retaliation" argument, mentioned for the first
time in the punishment hearing, was neither timely nor specific. Furthermore, appellant
never asked for dismissal of the indictment nor did he offer evidence to support a due-process claim. The State was never afforded an opportunity to offer rebuttal evidence, and
the trial court was never asked to rule upon a legal claim of prosecutorial vindictiveness.

A. The claim was not timely.

 The Texas Code of Criminal Procedure requires that, if a defendant seeks dismissal
of an indictment as the remedy for his constitutional or statutory claim, the Rule 33.1
requirement of timeliness means that the claim generally must be raised and ruled upon
before trial. (22) Under Article 28.01, a trial court must determine such "preliminary matters"
at a pre-trial hearing. (23) All preliminary matters which are not raised at the pre-trial hearing,
are generally considered forfeited. (24) A motion to set aside, dismiss, or quash an indictment
should be made at the first opportunity, (25) and must be presented to the trial court prior to an
announcement by that party that it is ready for trial. (26) This rule serves the salutary purpose
"of preventing unnecessary trials and deterring the interruption of a trial on the merits for any
objection relating to the institution and presentation of the charge." (27) It would make little
sense to wait until after a trial is complete before complaining that the trial should never have
taken place because the indictment was defective or should have been dismissed or quashed.

 In this case, appellant did file a timely motion to quash the indictment based on two
specific grounds: (1) an allegation of an illegal amendment to the indictment; and (2) a claim
under Tex. Penal Code §12.45, which provides that "[i]f a court lawfully takes into account
an admitted offense, prosecution is barred for that offense." (28) The court held a pretrial
hearing, and those were the only two issues discussed and ruled upon. Appellant's counsel
stated, during his closing arguments, that the State declined to re-offer its original two-year
plea bargain once it had re-indicted appellant. Thus appellant had ample time and
opportunity to include any pertinent legal claim of vindictiveness in his pretrial motions. 
Because appellant did not raise any prosecutorial vindictiveness claim at the pretrial hearing,
that claim-based on events that occurred before trial and were known to appellant before
trial-was untimely. (29) 

B. The claim was not specific.

 Nor was appellant's prosecutorial vindictiveness claim, to the degree that it was raised
at punishment, specific under Rule 33.1(a). At trial, appellant never asserted that the timing
of the re-indictment demonstrated either actual vindictiveness or a reasonable likelihood of
misconduct sufficient to raise a presumption of prosecutorial vindictiveness. He used the
timing to argue for mitigation of punishment-to prove that he deserved no more than the two-year sentence that the State had originally offered. Appellant took the stand and testified as
follows:

Q Now, when you got re-indicted, were you still willing and able to take - willing and
wanting to, to take the two original years?

A Yes, sir, I was.

Q Even though you thought it was over with?

A Yes, sir.

Q But in the negotiations then, they wouldn't agree to that, would they?

A No, sir.

Q Now, are you asking the Judge today for the original two years that you agreed to
back in 2000?

A Yes, sir, I am.

 ***

Q And after that [federal civil-rights] trial on February 28th, were you indicted for the
same incident?

A Yes, sir, I was.

Q And were you surprised?

A Yes, sir because I thought it was dismissed. So the first thing I felt was this was
retaliation.

Q Are you asking the Judge, in order to get this over with, - are you asking him for the
two years?

A Yes, sir, I am.


 Debra Neil-Terrell, appellant's sister, likewise testified she thought the re-indictment
was retaliation, but that a two year sentence would be fair:

Q And why did you want to be here for the sentencing?

A Because I would like to talk to the Judge and speak to him on behalf of my brother,
because I truly feel this case is not about justice. It's about revenge.

 ***

Q Now, are you asking the Court - what are you asking the Court to do today?

A I'm begging the Court to please give my brother the original deal.

Q Of two years?

A Of two years, yes.

Q And do you think justice will be served that way?

A Yes, I do.


 Appellant never uttered the words "prosecutorial vindictiveness" at trial. He never
made this due-process claim at trial nor did he request the same relief at trial-dismissal of
the indictment- that he requested on appeal. (30) What he did assert at trial was that the State
acted in bad faith when it refused to re-offer the two-year plea bargain that it had agreed to
before it dismissed the indictment in November 2000, which was before the federal civil
trial. (31) This was not sufficient to put the trial court or the State on notice that he was raising
a legally-cognizable due-process claim and seeking dismissal of the indictment. Appellant's
due-process vindictiveness theory on appeal bore no resemblance to the equitable plea he
made at trial. His position at the punishment hearing was that any sentence over two years
would be unfair. This was not sufficient to put the trial court on notice of a due-process
claim.

C. The claim was not ruled on by the trial court.

 Because appellant never made his due-process claim in the trial court, that court was
never given the opportunity to either hear evidence or rule on it. In Zillender v. State, (32) we
stated the two-fold policies of requiring specific objections at trial: 

 First, a specific objection is required to inform the trial judge of the basis of
the objection and afford him the opportunity to rule on it. Second, a specific
objection is required to afford opposing counsel an opportunity to remove the
objection or supply other testimony. (33)


Because a defendant must prove his prosecutorial vindictiveness claim, the importance of
making that claim in the trial court is paramount. Appellant never formally offered any
evidence to support this claim, and the State was never given an opportunity to offer
evidence to rebut this claim. We stated in Bone v. State: (34)

 Under our system of justice, the criminal defendant is entitled to an
opportunity to explain himself and present evidence on his behalf. His counsel
should ordinarily be accorded an opportunity to explain her actions before
being condemned as unprofessional and incompetent. (35)


We should ordinarily accord the same opportunity to a prosecutor to explain his actions
before a court condemns him as having violated a defendant's due-process rights with a
vindictive prosecution and orders dismissal of a felony conviction. (36) 

 If appellant had properly raised this issue in a written pretrial motion, the State would
have been on notice to introduce the federal court judgment (thus obviating a mistake of fact
by the court of appeals) (37) and the prosecutor could have testified concerning any new
evidence, such as appellant's letters from jail, that had come to his attention since the original
dismissal of charges. The trial judge would have had an opportunity to rule upon that
motion, based upon all of the evidence and by assessing the credibility of the prosecutor's
explanations.

IV.


 We conclude that the court of appeals violated ordinary notions of procedural default 
in reversing the trial court's judgment on a legal claim which was never presented in the trial
court. (38) In this case, it was only on appeal that appellant analogized his situation to that in
Blackledge. (39) The court of appeals agreed with his analogy:

 Even though the charges are exactly the same in this case, the reasoning still
applies. The sequence of events was that the State dismissed Neal's charge
completely, the civil suit was heard, and then the State refiled the same charge.
So in this case, Neal's position changed from being free from all charges to
being subjected to a newly-filed charge-hence the "same" charge (as the
original one) is "more serious" (than no charge at all). (40)


The court of appeals stated that there was no evidence in the record to overcome the
presumption of vindictiveness. (41) This is not surprising because the State was never on notice
of the claim, the defense never offered evidence to support that claim, the State was never
given an opportunity to offer rebutting evidence, and the trial court never given an
opportunity to rule upon that claim.

 Because appellant never presented his prosecutorial vindictiveness claim in the trial
court, he failed to preserve this issue for appellate review. We therefore reverse the
judgment of the court of appeals and affirm the trial court's judgment.

Cochran, J.

Delivered: November 17, 2004

Publish

 
1. Neal v. State, 117 S.W.3d 301 (Tex. App. - Texarkana 2003).
2. We granted the State Prosecuting Attorney's two grounds for review:

1) The court of appeals erred by reversing the trial court's judgment on a theory not properly
presented to the trial court and upon which the trial court was given no opportunity to
rule; and

2) The court of appeals erred in applying a presumption of prosecutorial vindictiveness to
the prosecutor's pretrial decision to re-indict, where the record fails to establish a
reasonable likelihood of vindictiveness.

 Because we agree with the State's first issue, we need not address the State's second
ground for review, and we therefore dismiss it.
3. In a bill of exceptions, the prosecutor testified that the decision to re-indict came after
the Sheriff's Office complained about the original dismissal. The Rusk County Jail
Administrator also testified. He stated that after appellant admitted under oath and in open court
that he was in possession of the deadly weapon, his office contacted the district attorney's office
about re-indicting appellant.
4. The court of appeals mistakenly believed that the weapons charge "was not re-filed until
after Neal went to trial and was awarded damages for violations of his civil rights against Rusk
County." Neal, 117 S.W.3d at 308. In fact, appellant testified that he found out he was awarded
damages on April 18th. The State has attached a copy of the federal district court's written
judgment to its brief in this Court. We decline to consider that attachment for the truth of its
contents, but we do take notice of the fact that this document, verifying the date of the federal
judgment as April 18, 2001, could have been introduced into evidence had appellant timely
raised his complaint in the proper forum.
5. Neal, 117 S.W.3d at 308-09. 
6. State v. Malone Serv. Co., 829 S.W.2d 763, 769 (Tex. 1992); Bordenkircher v. Hayes,
434 U.S. 357, 364 (1978) ("[i]n our system, so long as the prosecutor has probable cause to
believe that the accused committed an offense defined by statute, the decision whether or not to
prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his
discretion").
7. Gawlik v. State, 608 S.W.2d 671, 673 (Tex. Crim. App. 1980).
8. Castleberry v. State, 704 S.W.2d 21, 24 (Tex. Crim. App. 1984) ("[t]o punish a person
because he has done what the law plainly allows him to do is a due process violation of the most
basic sort, and for an agent of the State to pursue a course of action whose objective is to
penalize a person's reliance on his legal rights is 'patently unconstitutional.'") (quoting Hayes,
434 U.S. at 363). 
9. United States v. Goodwin, 457 U.S. 368, 373 (1982).
10. United States v. Johnson, 171 F.3d 139, 140-41 (2d Cir. 1999).
11. Goodwin, 457 U.S. at 380-81. See generally 4 Wayne R. LaFave, Jerold H. Israel
& Nancy J. King, Criminal Procedure § 13.7(c) (1999) (discussing historical evolution of
constitutional "prosecutorial vindictiveness" claims). The Supreme Court made clear that it
would be quite difficult for a defendant to meet the high burden of demonstrating actual
vindictiveness. Goodwin, 457 U.S. at 384 n.19 (quoting government's brief that "the defendant
is free to tender evidence to the court to support a claim that enhanced charges are a direct and
unjustifiable penalty for the exercise of a procedural right. Of course, only in a rare case would a
defendant be able to overcome the presumptive validity of the prosecutor's actions through such
a demonstration").
12. Blackledge v. Perry, 417 U.S. 21 (1974). In Goodwin, the Supreme Court explained
why the presumption of vindictiveness prong rarely-if ever-applied outside the context of prior
conviction, successful appeal, and post-appeal enhanced charging decision:

 There is good reason to be cautious before adopting an inflexible presumption of
prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case
for trial, the prosecutor may uncover additional information that suggests a basis
for further prosecution or he simply may come to realize that information
possessed by the State has a broader significance. At this stage of the
proceedings, the prosecutor's assessment of the proper extent of prosecution may
not have crystallized. In contrast, once a trial begins-and certainly by the time a
conviction has been obtained-it is much more likely that the State has discovered
and assessed all of the information against an accused and has made a
determination, on the basis of that information, of the extent to which he should
be prosecuted. Thus, a change in the charging decision made after an initial trial is
completed is much more likely to be improperly motivated than is a pretrial
decision.

Goodwin, 457 U.S. at 381.
13. Goodwin, 457 U.S. at 375; see also United States v. Paramo, 998 F.2d 1212, 1220 (3rd
Cir. 1993)("[e]ven if a defendant establishes a realistic likelihood of vindictiveness, however, the
government still has an opportunity to proffer legitimate, objective reasons for its conduct").
14. United States v. Krezdorn, 693 F.2d 1221, 1229 (5th Cir. 1982) (stating that when
presumption of prosecutorial vindictiveness applies, "the district court may consider any
reasonable explanation for the added charges, so long as the explanation tends to negate an
inference of retaliatory motivation").
15. Id.; see also United States v. Johnson, 91 F.3d 695, 698 (5th Cir. 1996) ("[a] district
court's factual findings on prosecutorial vindictiveness are reviewed for clear error and the legal
principles which guide the district court are reviewed de novo").
16. Texas v. McCullough, 475 U.S. 134, 138 (1986).
17. Goodwin, 457 U.S. at 384 & n.19; see also United States v. Whaley, 830 F.2d 1469,
1479 (7th Cir. 1987) ("[t]o prove actual vindictiveness, there must be objective evidence that a
prosecutor acted in order to punish the defendant for standing on his legal rights").
18. United States v. Sarracino, 340 F.3d 1148, 1177-79 (10th Cir. 2003); United States v.
Moulder, 141 F.3d 568, 572 (5th Cir. 1998) ("[i]n reviewing a prosecutorial vindictiveness claim,
'the court must examine the prosecutor's actions in the context of the entire proceedings.' The
defendant must prove the claim by a preponderance of the evidence; and, '[i]f any objective
event or combination of events ... should indicate to a reasonable minded defendant that the
prosecutor's decision to increase the severity of charges was motivated by some purpose other
than a vindictive desire to deter or punish appeals, no presumption of vindictiveness is created'")
(citations omitted).
19. United States v. Contreras, 108 F.3d 1255, 1262-63 (10th Cir. 1997). 
20. The dissent argues that this Court does not address the claim that appellant actually
raised in the trial court. That is, to some extent, true. The claim that appellant brought in the
trial court was his closing argument equitable plea that the trial judge should not impose any
greater sentence than the two-year plea bargain that the prosecutor had once agreed to. That is
not a legal claim of prosecutorial vindictiveness. Neither appellant nor the dissent cite any
precedent that a plea-bargain offer that is once made, but later retracted, may form the basis of a
legal claim of prosecutorial vindictiveness. It is largely for this reason that we have set out the
two possible legal bases for a constitutional claim of prosecutorial vindictiveness in Part II. 

 This Court can address only the decision by the court of appeals, see Tex. R. App. P. 66.1,
and that court ordered dismissal of the indictment on a legal claim that was not raised in the trial
court.
21. Mendez v. State, 138 S.W.3d 334, 342 (Tex. Crim. App. 2004).
22. See 43A George E. Dix and Robert O. Dawson, Texas Practice: Criminal
Practice and Procedure § 42.78, at 274 (2d ed. 2001). 
23. Under Tex. Code Crim. Proc. art. 28.01 preliminary matters include: 

 (1) Arraignment of the defendant, if such be necessary; and appointment of
counsel to represent the defendant, if such be necessary; (2) Pleadings of the
defendant; (3) Special pleas, if any; (4) Exceptions to the form or substance of the
indictment or information ....
24. Tex. Code Crim. Proc. art. 28.01, § 2, provides that "[w]hen a criminal case is set for
such pre-trial hearing, any such preliminary matters not raised or filed seven days before the
hearing will not thereafter be allowed to be raised or filed, except by permission of the court for
good cause shown; provided that the defendant shall have sufficient notice of such hearing to
allow him not less than 10 days in which to raise or file such preliminary matters. The record
made at such pre-trial hearing, the rulings of the court and the exceptions and objections thereto
shall become a part of the trial record of the case upon its merits."
25. Valadez v. State, 408 S.W.2d 109, 111 (Tex. Crim. App. 1966).
26. Wilson v. State, 398 S.W.2d 291, 293 (Tex. Crim. App. 1966) (op. on reh'g). 
27. Sewell v. United States, 406 F.2d 1289, 1292 (5th Cir. 1969).
28. Appellant claimed that, because the State checked the box "convicted on other charges"
on the dismissal form when it originally dismissed the weapons indictment, the trial court must
have taken this indictment into account in accepting the plea bargain in the forgery and burglary
charges. The trial court rejected this claim because appellant pleaded guilty to those crimes
before he was ever indicted for the deadly-weapon offense and there was no evidence that the
trial court had taken this uncharged offense into account in accepting the plea bargain on the
forgery and burglary charges.
29. See United States v. Peterson, 233 F.3d 101, 105 (1st Cir. 2000) ("[b]ecause Peterson
failed to raise a claim of vindictive prosecution prior to trial, the claim is waived and we review
for plain error"); Jarrett v. United States, 822 F.2d 1438, 1442 (7th Cir. 1987) ("Rule 12(b)
requires that motions for selective and vindictive prosecution must be brought prior to trial or
they will be deemed waived"); United States v. Conkins, 9 F.3d 1377, 1382 (9th Cir. 1993) ("a
claim of 'vindictive prosecution' presents primarily factual questions of government motive.
However, Sandvig did not raise this issue below, and therefore there is no evidence in the record
to support his contention. Therefore, this issue does not present any of the exceptional
circumstances that warrant a departure from our rule barring consideration of an issue raised for
the first time on appeal"). 
30. The dissent notes that appellant did request, as alternative relief, that the court of
appeals remand the case for a new trial or enforcement of the State's original plea offer, but that
alternative relief is nonetheless based upon a legal claim that was never presented to the trial
court. 
31. In his closing statement, appellant's attorney argued for a two-year sentence, not
dismissal of the indictment:

 Now, you know, you try- the law is supposed to do justice. The law is supposed
to be equal to all. What each one of us interpret as justice makes the difference on
what different people get. At one time, me and the Prosecutor in this case were on
the same line with Ronnie Joe Neal as to what justice was in this case, and that
was two years in the state penitentiary. That's what we all thought justice would
be served in this case.

 But for some reason, it was dismissed, just up and dismissed by the
District Attorney, who undoubtedly thought at that time even two years was too
much justice, so they just dismissed. And I think there's been testimony as to why
it was dismissed is because the night before the plea, the Sheriff's Office found
out he had AIDS, and they took him back and didn't want to bring him back to
Rusk County. But then when the federal lawsuit is heard, all at once justice
should be 2 to 20 years. Not 2 years, but anywhere between 2 and 20 years.

 That is not justice. That is punishing a man for filing suit on violation of
his civil rights and not punishing for any criminal things he had done. And that
ain't justice, Judge. In no sense of the word is that justice. Now, this man here, I
think to resolve this issue, he's in agreement, his sister's in agreement, I'm in
agreement, punish him with the original two years that everybody thought was
right.
32. 557 S.W.2d 515 (Tex. Crim. App. 1977).
33. Id. at 517.
34. 77 S.W.3d 828 (Tex. Crim. App. 2002).
35. Id. at 836.
36. See United States v. Amberslie, 312 F. Supp.2d 570, 571-72 (S.D.N.Y. 2004) (stating
that when defendant provides sufficient circumstances to raise a rebuttable presumption of
vindictiveness sufficient to require the Government to respond with evidence of lack of animus,
"[s]uch a response may normally be made, at least in the first instance, through affidavits from
the relevant prosecutors, after which the burden shifts back to the defense to establish that the
proffered response is pretextual or otherwise inadequate"). 
37. See note 4, supra.
38. Hailey v. State, 87 S.W.3d 118, 122 (Tex. Crim. App. 2002) ("a trial court's decision
will not be reversed on a theory the trial court did not have an opportunity to rule upon and upon
which the non-appealing party did not have an opportunity to develop a complete factual
record").
39. Even then, appellant did not articulate whether his vindictive-prosecution claim was one 
purportedly raising a presumption of vindictiveness or one of actual animus. Arguably,
therefore, the court of appeals reversed the trial court on a theory that was never properly raised,
even in the appellate court.
40. Neal, 117 S.W.3d at 308.
41. But see United States v. White, 972 F.2d 16, 19 (2d Cir. 1992)("White violated federal
and state laws in selling illegal drugs. The state's 1986 decision not to prosecute White is
unrelated to the federal Government's 1991 determination that there was probable cause to
believe that White had committed narcotics offenses. Even though White can show that his
forfeiture claim brought his unprosecuted activities to the prosecutor's attention, this showing
does not establish vindictiveness").