COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| JESUS CASTILLO, | § | No. 08-08-00332-CR |
|  | § |  |
| Appellant, | | Appeal from the |
|  | § | |
| V. | | 346th Judicial District Court |
|  | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
|  | § | |
| Appellee. | | (TC# 20070D04803) |
|  | § | |
|  | § | |

**O P I N I O N**

Appellant was convicted of one count of aggravated sexual assault of a child younger than fourteen and two counts of indecency with a child by sexual contact. Both convictions were enhanced by Appellant's plea of true to two prior felony convictions for burglary. The jury sentenced Appellant to 25 and 12 years' respectively for the convictions. On appeal, Appellant raises four issues challenging the trial court's admission of the complainant's videotaped interview with Child Protective Services, and the legal and factual sufficiency of the evidence supporting the convictions.

In December 2006, Olivia Quezada, an investigator with the Texas Department of Family and Protective Services ("CPS"), received a report alleging the complainant in this case, A.F. had been sexually abused. CPS was investigating allegations of neglect against A.F.'s mother at the

time, and had moved A.F. and her siblings into foster care.[1]  A.F. was eight years' old at the time. Ms. Quezada conducted a preliminary interview with A.F., and her sister, I.F., in the girls' foster home.  A.F. told Ms. Quezada that Appellant, a friend of her mother's, had touched her vagina on several occasions.  Ms. Quezada immediately reported A.F.'s allegations to the El Paso Police Department.  El Paso Police Detective Maribeth Pena headed the investigation.

A.F. was interviewed by child forensic interviewer, Laura Frescas, at the El Paso Advocacy Center on January 30, 2007.  The entire interview was recorded.  A.F. told investigators that the abuse happened while she and her mother and siblings were living with Appellant at a house in El Paso.  Appellant was indicted for one count of aggravated sexual assault of a child, and three counts of indecency with a child in October 2007.  The State abandoned counts four and five at trial.  The remaining aggravated sexual assault charge and indecency with a child charges alleged that Appellant had sexually assaulted A.F., a child younger that fourteen, by causing the penetration of her anus (Count I), and that he had engaged in sexual contact by touching A.F.'s genitals and breast (Counts II and III).

The case went to trial in August 2008.  During trial, A.F. testified that Appellant touched her vaginal area.  She testified that Appellant called her to him, and that she was on top of Appellant for a few minutes.  She got off because she "didn't like it."  She could feel Appellant's "middle part," "wiggling" and "it was nasty."  A.F. told her mother several times that Appellant

---

[1] The allegations against A.F.'s mother included physical neglect of all the children, and medical neglect of A.F. specifically.  A.F. was born with spina bifida, a congenital defect which limited her ability to walk, and has required leg braces.  CPS first took custody of A.F. and her siblings in December 2004, in part, due to her failure to followup with A.F.'s medical and therapy appointments.  The children were returned to her mother's care in December 2005, and removed again due to neglect between August and September 2006.

touched her, but her mother did not believe her. A.F. testified that she did not remember Appellant touching her any other times. The State also introduced the DVD recording of A.F.'s forensic interview into evidence. Over defense counsel's objections, the trial court admitted the DVD, and the jury was permitted to view the entire interview.

In Issues One and Two, Appellant contends the trial court abused its discretion by admitting a DVD recording of the entirety of A.F.'s forensic interview into evidence. Specifically, in Issue One, Appellant argues the rule of optional completeness was not a proper basis for the video's admission as it contained hearsay statements. In Issue Two, Appellant asserts the trial court abused its discretion by failing to review the video in-camera prior to ruling on its admissibility. Evidentiary rulings are committed to the sound discretion of the trial court, and will only serve as a basis for reversal if the record demonstrates the court's ruling admitting or excluding the challenged evidence constituted an abuse of that discretion. *See Sauceda v. State*, 129 S.W.3d 116, 120 (Tex.Crim.App. 2004). The judgment will be upheld if the ruling was correct on any theory of law applicable to the case, in light of the facts and circumstances before the court at the time of the ruling. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).

Following the testimony of A.F. and her sister, the State re-called Detective Maribeth Pena of the El Paso Police Department's Crimes Against Children Unit to introduce State's Exhibit 1; a DVD recording of A.F.'s forensic interview. The State moved for admission of the recording under Texas Rule of Evidence 107, the rule of optional completeness. The State argued that defense counsel's cross-examination of A.F. opened the door for the admission of the entirety of the video by referencing statements the child made to the interviewer in a manner

which could have left a false impression of the child's statement and testimony with the jurors. Defense counsel objected to the State's theory of admissibility on the basis that the rule of optional completeness was not implicated because none of the interview had been admitted into evidence previously. In the alternative, defense counsel argued the rule of optional completeness, at most, authorized admission only of those parts of the video which were necessary to correct any false impressions created by his cross-examination.[2] The trial court overruled counsel's objections, and admitted the video pursuant to the rule of optional completeness in order to correct any false impressions which may have been created during A.F.'s cross-examination.[3]

The rule of optional completeness is contained in Texas Rule of Evidence 107. *See* TEX.R.EVID. 107. Rule 107 is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party. *Credille v. State*, 925 S.W.2d 112, 116 (Tex.App.--Houston [14th Dist.] 1996, pet ref'd). The purpose of Rule 107 is to reduce the possibility of confusion, distortion, or false impressions arising from the introduction of part of a writing, tape, or conversation out of context. *Id*. To that end, when defense counsel cross-examines a complainant regarding the complainant's videotaped statement in a manner that could leave a false impression about the contents of the statement in the jurors' minds, the recording is

---

[2] Defense counsel also objected to Exhibit 1 under Texas Code of Criminal Procedure Article 38.071, section 1(8), and Texas Rule of Evidence 107.

[3] Simultaneously, the trial court denied Appellant's request that the recording be admitted, and accompanied by an appropriate instruction, for the limited purpose of demonstrating a prior inconsistent statement by the complainant.

admissible to ensure the jury fully understands the conversation. *See Tovar v. State*, 221 S.W.3d 185, 190-91 (Tex.App.--Houston [1st Dist.] 2006, no pet.). At the same time, the rule does not support admission of the recording in circumstances where the recording is not necessary to clarify the context of the statement, or its admission would likely lead to confusion. *See id*. at 191. A recording is unnecessary, for example, if it is offered merely to demonstrate the absence of a statement by the complainant rather then the existence of a directly contradictory statement. *See Sauceda*, 129 S.W.3d at 121-24. Similarly, a recording is likely to lead to create confusion if it contains references to extraneous offense evidence. *See id*.

During cross-examination of A.F., defense counsel referenced her interview at the child advocacy center numerous times. Throughout the cross-examination, counsel suggested that the complainant's testimony was contrary to her statement. He asked A.F. whether she told the interviewer the truth, and whether A.F. told the interviewer that she told her father about Appellant's actions. He questioned A.F. about the description she gave the interviewer; specifically how she described her attacker's tatoos during the interview. Counsel also asked A.F. whether she and her sister had ever been left in Appellant's care by their mother. When A.F. answered "no," counsel asked whether A.F. told the interviewer that her mother left her and her sister at Appellant's house for a "long time," to which the child responded, "no." The following exchange then took place:

Q:      No? Okay. If we watch the - - if we watch the video, you are not going to say that?

A.      No.

Q.      No? Because your mother never left you at [Appellant's] for a long time, did she?

A.     No.

Q.     She was always with you?

A.     Yes.

Q.     All the time that you were at [Appellant's] house?

A.     Yes.

Q.     How long, do you know, did you live at [Appellant's] house?

A.     For like a week.

Q.     A week.  Do you know how much a week is?

A.     No.

                    .         .         .

Q.     Okay.  How many days a week do you go to school; do you know?

A.     No.

Q.     No.  Do you go to school everyday?

                    .         .         .

A.     No, I go on Monday through Friday.

                    .         .         .

Q.     Okay, so Saturday and Sunday, you don't go to school, right?

A.     Yes.

Q.     So -- So your mother left you there on a Saturday or Sunday all by yourself at [Appellant's] house, right?

A.     No.

Q.     So would you have been mistaken if you told Ms. Frescas that your mother had left you there for a long time by yourself?  Was that just a mistake?

A.    Yeah.

Q.    Do you remember telling Ms. Frescas that your mother had left you at [Appellant's] house for a long time and had gone far away?

A.    No.

Q.    You don't remember that?

A.    No.

By suggesting that A.F.'s statement and testimony were inconsistent, and by indicating that A.F. was not able to recall events surrounding the abuse, Appellant's attorney gave the State a "right of reply" to correct the false impressions. *See Tovar*, 221 S.W.3d at 191. In addition, because Appellant's counsel used specific statements from the interview to challenge A.F.'s credibility, the entire recording was admissible. *See Credille*, 925 S.W.2d at 116. Under these circumstances, the trial court did not abuse its discretion by admitting the recording into evidence in order to clarify the contents and context of A.F.'s statement. Issue One is overruled.

In Issue Two, Appellant maintains that the trial court's failure to review the recording in-camera prior ruling on its admissibility constituted an additional abuse of discretion. However, Appellant's attorney never requested that the trial court view the recording, nor did counsel object to the court's ruling on the basis that it had not viewed the recording. In order to preserve a complaint for appellate review, the record must demonstrate the appellant made a timely and specific objection. *Layton v. State*, 280 S.W.3d 235, 238-39 (Tex.Crim.App. 2009), *citing* TEX.R.APP.P. 33.1(a)(1)(A). Because Appellant failed to raise his in-camera viewing argument in the trial court, it has not been preserved for our review. *See Neal v. State*, 150 S.W.3d 169, 180 (Tex.Crim.App. 2004). Issue Two is therefore, overruled.

In Issues Three and Four, Appellant challenges the legal and factual sufficiency of the evidence supporting all three convictions. As a preliminary matter, we must note that since Appellant filed his brief in this case, the Texas Court of Criminal Appeals has ruled that the only standard applicable to determine whether the evidence is sufficient to support each element of a criminal offense is the standard for legal sufficiency defined by *Jackson v. Virginia*. *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, *1 (Tex.Crim.App. 2010)(holding that "*Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense . . ."). Therefore, without addressing the merits of Appellant's factual insufficiency argument further, we overrule Issue Four.

In Issue Three, Appellant challenges the legal sufficiency of the evidence supporting his conviction. A legal sufficiency review requires the appellate court to determine whether, "[c]onsidering all the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt." *See Brooks*, No. PD-0210-09, 2010 WL 3894613, at *5, *citing Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 3789. When conducting such a review, this Court is required to defer to the jury's role as the sole judge of witness credibility, and the weight their testimony is to be afforded. *Brooks*, No. PD-0210-09, 2010 WL 3894613, at *5.

As is evidenced by the standard of review, a challenge to the sufficiency of the evidence should generally be directed at an element, or group of elements essential to the conviction. *See Id*. at *5; *see also Roberts v. State*, 273 S.W.3d 322, 326-27 (Tex.Crim.App. 2008)(in a legal sufficiency review, the court must consider all of the evidence in a light most favorable to the

-8-

verdict, and determine whether a reasonable minded juror could have found the essential elements of the offense were proven beyond a reasonable doubt). In this case, however, rather than arguing that any one or more elements of the offense is not supported by sufficient evidence, Appellant's argument is limited to a lengthy comparison between the content of A.F.'s interview and the substance of her trial testimony. After reciting a large portion of the testimony in his brief, Appellant concludes that the child was wholly incredible as a witness, and therefore her testimony is insufficient to support the convictions.

The Texas Court of Criminal Appeals rejected a similar argument in *Chambers v. State*, 805 S.W.2d 459, 460-61 (Tex.Crim.App. 1991). In *Chambers*, as in this case, the jury was permitted to view the videotape of the child's pretrial interview. *Chambers*, 805 S.W.2d at 460. Also, similar to this case, although the State's case included additional evidence, the defendant and the complainant were the only eyewitnesses to the offense. *Id*. Unlike the case before us, in *Chambers*, the child recanted when she was re-called during the defendant's case. *Id*. The Court of Appeals determined the child's recantation destroyed the probative value of the evidence and reversed the conviction. *Id*. at 461. The Court of Criminal Appeals reinstated the conviction, characterizing the inconsistencies in the child's testimony as "conflicts" in the evidence, and attributing the reconciliation of those conflicts to the jury. *Id*.

As we discussed in Issues One and Two, the jury was permitted to view the entirety of A.F.'s forensic interview in addition to the testimony she gave at trial. In finding Appellant guilty of the charged offenses, the jury implicitly resolved the conflicts between the two accounts in favor of conviction. *See Chambers*, 805 S.W.2d at 461. Because we are bound by the jury's resolution of this issue of weight and credibility, and are not permitted to disregard evidence

which was before the jury, we disagree that conflicts between A.F.'s pretrial account and her trial testimony render the evidence insufficient to support the convictions. Accordingly, Issue Three is overruled. Having overruled all of the issues Appellant has presented for review, we affirm the trial court's judgments.

The trial court certified Appellant's right to appeal, however the certification does not include Appellant's signature as required by the Texas Rules of Appellate Procedure, indicating that he has been informed of his rights to appeal or file a *pro se* petition for discretionary review. This defect has not been remedied by the trial court or Appellant's attorney. We therefore, ORDER Appellant's attorney, pursuant to Texas Rule of Appellate Procedure 48.4, to send Appellant a copy of this opinion and our judgment, to notify Appellant of his right to file a *pro se* petition for discretionary review, and to inform Appellant of the pertinent deadlines. *See* TEX.R.APP.P. 48.4, 68. Appellant's attorney is further ORDERED to comply with any additional requirements of Rule 48.4.


October 20, 2010

DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Barajas, C.J. (Ret.)
Barajas, C.J. (Ret.)(Sitting by Assignment)

(Do Not Publish)