

# IN THE
## TENTH COURT OF APPEALS

### No. 10-11-00266-CR
### No. 10-11-00267-CR

**JOSE MARIA GARCIA,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court Nos. 2011-1345-C1 and 2011-360-C1**

## MEMORANDUM OPINION

In Cause No. 10-11-00266-CR, the jury convicted Jose Maria Garcia of the offense of attempted capital murder and assessed his punishment at confinement for life. In Cause No. 10-11-00267-CR, Garcia entered a plea of guilty to the offense of aggravated robbery. The trial court assessed punishment at confinement for life and ordered the sentence to run consecutively to Cause No. 10-11-00266-CR. We affirm.

## Background Facts

Garcia does not challenge the sufficiency of the evidence to support his convictions. Deputy Louis Lourcey, Jr., with the Falls County Sheriff's Office, attempted to initiate a traffic stop on Garcia's vehicle traveling on Interstate 35. Deputy Lourcey activated his overhead lights, and Garcia accelerated. Deputy Lourcey pursued Garcia for over a mile before Garcia pulled onto the shoulder of the interstate. Deputy Lourcey was notifying dispatch of the stop when he saw Garcia exit his vehicle. Garcia approached Deputy Lourcey's vehicle, raised his weapon, and fired shots at the deputy. The shots hit the windshield of the patrol vehicle. Garcia returned to his vehicle and left the scene, and Deputy Lourcey pursued him.

Garcia exited the interstate and entered a residential area. Deputy Lourcey positioned himself at an intersection where he was likely to encounter Garcia. As Garcia rounded the corner, Deputy Lourcey fired a shot and hit Garcia's windshield. Garcia continued driving and struck Deputy Lourcey's patrol car with his vehicle. Deputy Lourcey was behind the door of the patrol car for protection, and after impact, he was pinned between the door and the vehicle. Garcia left the scene again, and Deputy Lourcey was no longer able to continue the pursuit.

Garcia abandoned his vehicle near a baseball field and began walking to the interstate. Garcia went to a convenience store where he pointed a gun at a man and demanded the man's car keys. When the man refused, Garcia shot him five times.

**Voir Dire**

In his first issue, Garcia argues that the trial court abused its discretion in prohibiting him from comparing different standards of proof in voir dire. In the second issue, Garcia contends that the trial court erred in instructing the jury panel on the reasonable doubt standard of proof. Garcia filed a written objection to the trial court's limitation of voir dire questions. The written objection requested that Garcia be allowed to question the jury panel on the "lower limits" of proof beyond a reasonable doubt to make certain there is no misunderstanding that the criminal burden of proof is the highest burden. Prior to voir dire, the trial court held a hearing on Garcia's written objections. The trial court overruled the objection and stated:

> I'll state on the record again, once again, why I do not allow comparison of the standard of proof in a criminal case, proof beyond a reasonable doubt, with standards of proof in civil cases, either preponderance of the evidence or clear and convincing evidence. Since there is no statutory definition of proof beyond a reasonable doubt that is required, I think it's misleading and confusing to the jury panel to try to quantify the amount of evidence that applies in a civil case to that in a criminal case. In a civil case there are legal definitions of preponderance of the evidence and clear and convincing evidence, but even there, there is no way to quantify how much evidence is necessary. … You don't define - - you don't determine reasonable doubt - - beyond a reasonable doubt by the quantity of evidence that is produced.

> During voir dire, the trial court instructed the jury panel:

> There is no legal definition of what proof beyond a reasonable doubt is. It's left up to each individual juror in their own mind to determine if and when that standard has been met. …It's a very illusory concept. But we leave it up to each individual juror to determine for themselves if and when that standard has been met.

The trial court has broad discretion over the process of selecting a jury. *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). We leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion. *Id*.

Garcia was tried in July 2011, and in March 2012, the Court of Criminal Appeals decided *Fuller v. State*, 363 S.W.3d 583 (Tex. Crim. App. 2012). In *Fuller*, the Court stated the jury's ability to apply the correct standard of proof remains an issue in every criminal case. *Fuller v. State*, 363 S.W.3d at 587. The Court held that inquiry into whether a prospective juror understands that proof beyond a reasonable doubt must at least constitute a more onerous standard of proof than preponderance of the evidence and clear and convincing evidence is permissible. *Id*. The Court further found that it is appropriate to explain the contrast among the various standards of proof. *Fuller v. State*, 363 S.W.3d at 588. Therefore, the trial court erred in not allowing Garcia to question the jury panel on the differences between the criminal and civil burdens of proof and in instructing the jury on the standard of reasonable doubt.

The trial court's error in not allowing Garcia to question the jury on the burden of proof is subject to harm analysis. *Fuller v. State*, 363 S.W.3d at 589. Garcia argues that the error is of a constitutional magnitude and should be analyzed under TEX. R. APP. P. 44.2(a).

In *Anderson v. State*, a case that originated in the same trial court as the case before us, the Amarillo Court of Appeals[1] considered the same issue in which the trial court did not allow defense counsel to compare the burden of proof required in a criminal case with the burden of proof required in a civil case during voir dire. *Anderson v. State*, 341 S.W.3d 585 (Tex. App.—Amarillo 2011), *vacated*, 366 S.W.3d 198 (Tex. Crim. App. 2012). The Amarillo Court initially found that the trial court did not abuse its discretion in denying defense counsel's request to ask questions during voir dire about the different civil standards of proof while questioning the venire panel in a criminal case. *Anderson v. State*, 341 S.W.3d at 588. On review, the Court of Criminal Appeals vacated the judgment of the Court of Appeals and remanded for reconsideration in light of *Fuller*. *Anderson v. State,* 366 S.W.3d 198, 199(Tex. Crim. App. 2012). On remand, the Amarillo Court found that the denial of appropriate questioning during voir dire constitutes nonconstitutional error that is subject to harm analysis under TEX. R. APP. P. 44.2 (b). *Anderson v. State*, No. 07-10—0139-CR, 2012 Tex. App. Lexis 6232, (Tex. App.—Amarillo July 30, 2012, pet. den'd)(mem. op., not designated for publication). The Court of Criminal Appeals denied the petition for discretionary review. *In re Anderson*, 2012 Tex. Crim. App. LEXIS 1374 (Tex. Crim. App., Oct. 24, 2012). We follow the court in *Anderson* and find that error in denying appropriate questions during voir dire is subject to nonconstitutional harm analysis under TEX. R. APP. P. 44.2 (b).

---

[1] The case was transferred on appeal from the 10th Court of Appeals in Waco to the 7th Court of Appeals in Amarillo.

A reviewing court should disregard any "error, defect, irregularity, or variance that does not affect substantial rights" of the appellant. TEX. R. APP. P. 44.2 (b). A substantial right is affected "when the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d at 577. In conducting the harm analysis, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Id*.

During voir dire, the trial court instructed the jury panel that at all times the State has the burden of proof, that the State has to produce evidence, and that the defendant does not have to produce evidence because he is presumed innocent. The trial court thoroughly discussed the beyond a reasonable doubt standard of proof. The error in denying the questions comparing the standards of proof did not shift the burden to the defense or lessen the State's obligation to prove its case beyond a reasonable doubt. *See Anderson v. State*, No. 07-10—139-CR, 2012 Tex. App. Lexis 6232, (Tex. App.—Amarillo July 30, 2012, pet. den'd)(mem. op., not designated for publication).

Trial counsel was permitted to ask the jury panel what comes to mind when hearing the State has to prove the case beyond a reasonable doubt. Trial counsel also asked potential jurors what reasonable doubt means to them.

Garcia admitted to pointing the gun at Deputy Lourcey and firing the weapon. Garcia's defensive theory was that he did not intend to kill Deputy Lourcey when he fired at his vehicle. Garcia does not challenge the sufficiency of the evidence to support his conviction. *See Anderson v. State* at *8.

The charge instructed the jury that the State has the burden of proof and must prove each element of the charged offense beyond a reasonable doubt. There is nothing in the record to indicate that the State emphasized the error.

At the time of trial, the trial court did not have the benefit of the decision in *Fuller* and improperly limited Garcia's voir dire; however, the jury was properly and clearly instructed that the State had the burden of proving guilt beyond a reasonable doubt. *See Anderson v. State* at *9. We find that the trial court's improper limiting of voir dire did not have a substantial and injurious effect or influence on the jury's verdict. *See* TEX. R. APP. P. 44.2 (b); *Anderson v. State* at *10. We overrule Garcia's first and second issues.

In the third issue, Garcia complains that the trial court allowed the State to ask an improper commitment question during voir dire. A commitment question is a question that commits a prospective juror to resolve or to refrain from resolving an issue a certain way after learning of a particular fact. *Davis v. State*, 349 S.W.3d 517, 518 (Tex. Crim. App. 2011). Commitment questions are impermissible unless the law requires a

commitment. *Id*. Often, such questions ask for a "yes" or "no" answer, in which one or both of the possible answers commits the jury to resolving an issue a certain way. *Standefer v. State*, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001).

In determining whether a voir dire question is an improper commitment question we must determine: (1) whether the particular question is a commitment question, (2) if the question is a commitment question, does the question give rise to a valid challenge for cause, and (3) if the question does give rise to a valid challenge for cause, does the question contain only those facts necessary to test whether a prospective juror is challengeable for cause. *Standefer v. State*, 59 S.W.3d at 179-182.

During voir dire, the State was discussing "intent to kill" with the jury panel. The State asked, "The moment I held up a pistol or a weapon and pointed it at him and pulled the trigger, did I have the intent to kill him?" Garcia's objection was overruled. The State went on to discuss when and how intent is formed and explained that in Texas there is not a "premeditation statute." Viewed in context, the question did not seek a commitment in that the prospective jurors were not being asked to commit themselves to resolving an issue a certain way.

Moreover, any error in allowing the question did not have a substantial and injurious effect or influence on the jury's verdict. *See* TEX. R. APP. P. 44.2 (b). Only one potential juror answered the question, and the record does not show that juror was seated on the jury. Later during voir dire Garcia's counsel discussed instances where a person could point a weapon without having intent to kill. We overrule the third issue.

**Expert Testimony**

In the fourth issue, Garcia argues that the trial court erred in excluding relevant, reliable, and admissible expert testimony. Garcia sought to admit the testimony of psychologist Dr. William Lee Carter that Garcia did not have the intent to cause the death of Deputy Lourcey.

We review a trial court's ruling on the admissibility of expert testimony for an abuse of discretion. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Layton v. State*, 280 S.W.3d at 240.

Garcia argues that the trial court's decision to exclude the expert testimony of Dr. Carter is in direct contravention of the opinion in *Ruffin v. State*, 270 S.W.3d 586 (Tex. Crim. App. 2008). In *Ruffin*, the court found that the defendant's right to present a defense generally includes the due-process right to the admission of competent, reliable, exculpatory evidence to rebut the *mens rea* element of the offense. *Ruffin v. State*, 270 S.W.3d at 594. The Court held that "relevant evidence may be presented which the jury may consider to negate the *mens rea* element. And this evidence may sometimes include evidence of a defendant's history of mental illness." *Ruffin v. State*, 270 S.W.3d at 596 (quoting *Jackson v. State*, 160 S.W.3d 568, 574 (Tex. Crim. App. 2005).

Dr. Carter testified outside the presence of the jury during Garcia's bill of exceptions. He stated that he would testify that Garcia had the mental capacity to form intent and that Garcia was not suffering from delusions where he believed he was not actually shooting at a police officer. Dr. Carter further stated that Garcia "knew or should have known that what he was doing could result in some serious harm or

damage to people or property … [Garcia] had sufficient awareness to know that by shooting at or shooting specifically towards somebody could hurt or even kill them." Dr. Carter testified that he did not believe Garcia wanted to kill anybody or wanted to seriously harm anybody. Dr. Carter further testified, "I think [Garcia] had the capacity to formulate intent. I do not think that he intended to kill anybody."

In *Ruffin*, the defendant suffered from severe delusions and believed that he was shooting at Muslims, not police officers. Ruffin was charged with intentionally shooting at police officers, and he offered testimony to negate that element of the offense. The Court in *Ruffin* found that he was entitled to present evidence of his mental illness to negate the *mens rea* element of the offense.

Garcia was not suffering from delusions or mental illness that negated an element of the crime. Dr. Carter's testimony would have been that Garcia was capable of forming intent. Garcia also testified that he intended to shoot at Deputy Lourcey's vehicle. Evidence may also be excluded if it does not truly negate the required *mens rea*. *Ruffin v. State*, 270 S.W.3d at 596. Dr. Carter's testimony did not truly negate the element of *mens rea*, rather it was his opinion that Garcia did not want to harm anyone. We overrule the fourth issue.

### Cause No. 10-11-00267-CR

In his sole issue on appeal in Cause No. 10-11-00267-CR, Garcia argues that the State engaged in vindictive prosecution by offering a plea bargain and then subsequently withdrawing the offer. Garcia was indicted in Cause No. 10-11-00266-CR for the offense of attempted capital murder and in Cause No. 10-11-00267-CR for the

offense of aggravated robbery. The State offered Garcia a sentence of 50 years for each case to run consecutively in exchange for a plea of guilty in both cases. Garcia wanted a jury trial for the attempted capital murder case, but wished to accept the plea offer for the aggravated robbery case. Because Garcia did not agree to the terms of the State's plea offer, the State withdrew the offer. Garcia went to trial on the attempted capital murder charge. The jury convicted him and assessed his punishment at confinement for life. Garcia entered a plea of guilty to the offense of aggravated robbery. The trial court convicted him of the offense and assessed his punishment at confinement for life with the sentence to run consecutively to the life sentence for attempted capital murder.

Garcia argues that by withdrawing the plea offer for both cases the State forced him to forego the plea agreement in Cause No. 10-11-00267-CR in order exercise his right to a jury trial in Cause No. 10-11-00266-CR. Garcia contends that the State's actions constituted vindictive prosecution and violated his right to due process.

Prosecutors have broad discretion in deciding which cases to prosecute. *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). Courts must presume that a criminal prosecution is undertaken in good faith and in nondiscriminatory fashion to fulfill the State's duty to bring violators to justice. *Id*. A decision to prosecute violates due process when criminal charges are brought in retaliation for the defendant's exercise of his legal rights. *Id*. Under specific, limited circumstances, the presumption that a prosecution is undertaken in good faith gives way to either a rebuttable presumption of prosecutorial vindictiveness or proof of actual vindictiveness. *Id*.

A defendant establishes a claim for vindictive prosecution by offering either: (1) proof of circumstances that pose a realistic likelihood of such misconduct sufficient to raise a presumption of prosecutorial vindictiveness, which the State must rebut or face dismissal of the charges; or (2) proof of actual vindictiveness, that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right. *Neal v. State*, 150 S.W.3d at 173.

Garcia was indicted at the time of the plea negotiations. The State did not bring additional charges in retaliation for Garcia exercising his right to a trial by jury. Although it is a due process violation to punish a person because he has done what the law allows him to do, in the process of plea bargaining, there is no element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978). We do not find that the State engaged in vindictive prosecution. We overrule Garcia's sole issue in Cause No. 10-11-00267-CR.

## Conclusion

We affirm the trial court's judgments.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed November 15, 2012
Do not publish
[CRPM]