**VACATE and REMAND; Opinion Filed December 29, 2014.**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

No. 05-13-00421-CR
No. 05-13-00423-CR
No. 05-13-00424-CR
No. 05-13-00425-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**ALBERT G. HILL III, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F11-00180-Q, F11-00182-Q, F11-00183-Q, F11-00191-Q**

## OPINION

Before Justices Bridges, O'Neill, and Brown
Opinion by Justice Brown

On March 31, 2011, a Dallas grand jury returned multiple indictments against Albert G. Hill III and his wife for the offenses of making a false statement to obtain property or credit and securing execution of a document by deception.[1] The charges allegedly arose out of the Hills' procurement of a $500,000 home-equity loan in 2009. The State later dismissed the charges against Hill's wife and continued to prosecute the cases against Hill. In a motion filed shortly after the dismissal of his wife's charges, Hill sought to quash and dismiss the indictments against him, alleging he was the victim of various forms of prosecutorial misconduct in violation of his constitutional rights. Alternatively, he asked for an evidentiary hearing and discovery to develop

---

[1] *See* TEX. PENAL CODE ANN. §§ 32.32(b), 32.46(a) (West 2011).

the issues presented in his motion. Over the State's objections, the trial judge determined that Hill met his initial burden of proof related to his constitutional claims and therefore was entitled to a hearing "to try to prove" his allegations. After the judge held a hearing, the judge signed an order dismissing the indictment in each case with prejudice.

The State appeals that order. In its first two issues, the State challenges the propriety of the evidentiary hearing, arguing that Hill was not entitled to such a hearing because he failed to provide evidence to establish a constitutional violation. In its third and fourth issues, the State challenges the trial judge's (1) dismissal of the indictments based on the Dallas County District Attorney's refusal to testify at the hearing and (2) decision to dismiss the indictments with prejudice.

We agree with the State that the trial judge erred in conducting an evidentiary hearing on Hill's motion to quash and dismiss the indictments because Hill did not make the necessary showing related to his constitutional claims. Accordingly, we vacate the trial judge's order dismissing the indictments in these cases and remand the cases to the trial court with instructions to reinstate the indictments against Hill.

## I.

### A. Hill's Allegations of Prosecutorial Misconduct

Hill sought pretrial dismissal of the indictments based on alleged violations of his constitutional rights to due process and equal protection. He first alleged that his due process rights were violated because the Dallas County District Attorney, Craig Watkins, was not disinterested in the prosecution of him but rather was operating under the influence of Hill's father, who was adverse to Hill in contested litigation involving a multi-billion dollar family trust, and Lisa Baron Blue, a close friend and political patron of Watkins. Hill argued Watkins's decision to present the cases to the grand jury was influenced by the payment of political

contributions. Hill also alleged that a due process violation occurred because Watkins's decision to prosecute him was vindictive, asserting that the State brought the charges in retaliation for Hill having exercised his right to petition the civil courts. His third allegation was that he was selectively prosecuted in violation of his equal protection rights.

Hill based his allegations of prosecutorial misconduct on a series of "facts" that he presented in his motion. Hill stated that it was his father's lawyer, Michael Lynn, who filed the complaint with the DA's office accusing Hill and his wife of mortgage fraud. The complaint was submitted to the DA's office in February 2010, while the trust litigation was still pending and days after Hill's father received an adverse ruling in that case. The next month, Watkins received a series of campaign donations from Jeffrey Tillotson, a law partner at Lynn's firm. Hill asserted that neither Tillotson nor anyone at that firm had previously donated to Watkins's campaigns. The donations totaled $48,500, with the last donation made five months before the Hills were indicted.

Hill also asserted that the mortgage-fraud allegations were "highly unusual" because the home-equity loan was not in default and was repaid in full shortly after the loan was obtained. According to Hill, the lender did not suffer a loss and had not complained about any wrongdoing. In addition, Hill claimed the DA's office did not conduct a standard investigation because it failed to interview certain witnesses. Nor did the DA's office notify him that indictments were being considered despite Hill's claim that the DA's office had a policy of providing notice and giving the accused's lawyers an opportunity to address the grand jury before charges are presented.

Hill further complained that the timing of the indictments was suspect. In particular, Hill claimed the indictments were returned two weeks before the Hills were to begin trial in a fee dispute with the lawyers that represented them in the trust litigation, one of whom was Blue.

Hill explained that after the trust litigation settled, the Hills contested the amount of attorneys' fees sought by Blue and the other lawyers. The lawyers filed suit, maintaining the Hills owed over $50 million in attorneys' fees. Hill stated that because of the pending indictments, the Hills asserted their Fifth Amendment privilege against self-incrimination and did not testify in the fee-dispute litigation.

Hill emphasized that Blue exchanged numerous phone calls and text messages with Watkins and his assistant in the weeks before the indictments were returned. Hill also pointed out that Blue donated money to Watkins's campaign and held a social event at her home to raise money for the campaign during that same time frame. Hill alleged that the pattern of phone calls and text messages between Blue and Watkins revealed a "dramatic spike" in communications in the weeks before the indictments were returned and that the "heated exchange of calls" between Blue and Watkins ended after the indictments were announced. Further, in a deposition conducted after the conclusion of the fee-dispute trial, Hill claimed that Blue admitted that two of those phone calls from Watkins were about the indictments before the indictments were returned.

Hill also claimed that during Blue's representation of the Hills in the trust litigation, Blue "bragged" to him about her relationship with Watkins. Hill stressed that this was not "idle bragging" and that Blue has a "very close personal, professional and political relationship" with Watkins as represented by Blue's status as one of Watkins's largest individual donors, Blue's pro bono representation of Watkins in connection with an unrelated lawsuit, Blue's $100,000 donation to SMU law school to create a scholarship in Watkins's name, and the fact that Watkins hired Blue and another attorney to represent Dallas County in a contingent-fee suit.

Hill finally claimed that the DA's office "apologized" to the Hills on behalf of the DA's office, and he proclaimed that with the dismissal of the charges against his wife, the office

"effectively acknowledge[ed] the wrongfulness of those charges." According to Hill, the Hills' defense counsel met with Assistant District Attorney Deborah Smith in October 2012. Hill maintained that during that meeting, Smith "expressed significant concerns" about the charges and "stated that she would refuse to try the case if the DA's Office decided to go forward on any of the charges." Hill also maintained that Smith said that based on her re-evaluation of the cases, she decided to recommend dismissing certain charges against the Hills and was conducting due-diligence interviews related to the remaining charges. Shortly after the meeting, Smith communicated that she was reassigned to another division. Hill called this "remarkable news" given that Smith was in the middle of her re-evaluation of the charges against the Hills.

Hill argued the circumstances presented by these "facts" constitute "clear and appalling" violations of his constitutional rights and establish that the DA's office served as a "stalking horse" for the interests of (1) Hill's father, who Hill maintained reported the allegations of mortgage fraud in retaliation for his "exercise of his constitutional rights in the trust litigation"; (2) Lynn, who submitted the mortgage-fraud allegations to the DA's office and whose law partner donated $48,500 to Watkins's campaign; and (3) Blue, Watkins's friend and generous campaign contributor, who was seeking millions of dollars in attorneys' fees from the Hills at the time the indictments were returned. Hill maintained that the charges "had the desired effect" by impairing the Hills' ability "to exercise their constitutional rights to defend themselves" in the fee-dispute litigation involving Blue.

## B. Hill's Proffer of Evidence in Support of His Motion

As support, Hill attached forty-four exhibits to his motion, most of which were unauthenticated or not otherwise identified by affidavit testimony. Those exhibits included what appeared to be a page from Lynn's February 2010 complaint, various pleadings, excerpts from Watkins's campaign finance reports, e-mail exchanges among counsel in the trust litigation,

Blue's telephone records, a log of text messages between Blue and Watkins and his assistant, announcements about the SMU scholarship funded by Blue and about Watkins's hiring of Blue to help in unrelated litigation, a printout of a 2007 *Texas Lawyer* article about the office's grand jury policy, and Smith's e-mail about her reassignment. Hill also attached what appeared to be excerpts from (1) transcripts in the fee-dispute litigation related to the Hills' request for a continuance and their assertion of their Fifth Amendment privilege and (2) deposition testimony from (a) Blue in the fee-dispute litigation in which she testified to receiving two phone calls from Watkins about the indictments of the Hills and (b) Blue's co-counsel in the trust litigation, Stephen Malouf, who testified to overhearing one of those conversations.

## C.  The State's Response to Hill's Motion

The State filed a brief opposing the motion to quash and dismiss the indictments. The State argued the trial judge lacked the authority to grant Hill's motion because Hill failed to prove any constitutional violation. The State also emphasized that Hill's prosecution was not "the product of a favored and discontented campaign donor's audience with the District Attorney." Rather, the State asserted that the investigation into the offense began with the letter from Lynn, was investigated by an experienced prosecutor, and the decision to pursue charges against Hill was not unusual or exceptional given that the Specialized Crime Division of the DA's office regularly prosecutes cases like Hill's.

The State supported its opposition with various exhibits, including the affidavits of Assistant District Attorneys Donna Strittmatter and Stephanie Martin. Strittmatter testified that as the assigned prosecutor within the Specialized Crime Division, she received Lynn's February 2010 complaint and supporting documents, alleging numerous fraudulent acts committed by Hill in connection with a loan transaction. Strittmatter assigned the case to Martin to conduct an investigation. Martin testified that she personally investigated the allegations against Hill and

her investigation included receiving large volumes of documents from the bank and title company. Martin also obtained deposition testimony of Hill and others, and she spoke to legal counsel from the bank. Strittmatter confirmed that Martin investigated the case for several months and provided updates to her as Martin reviewed the evidence.

Martin also testified that the Specialized Crime Division within the DA's office regularly prosecutes crimes similar to those alleged to have been committed by Hill. She explained that many of the indictments the division obtains for the same crime involve property or credit valued at $200,000 or more. She said she personally prosecuted four mortgage-fraud cases involving circumstances where no loss was suffered.

Both Strittmatter and Martin testified that they did not have a practice of notifying a suspect that he is the target of a criminal investigation. Martin also stated that it was not her practice to provide a suspect with an opportunity to be heard by the grand jury before indictment. Both also testified that they were unaware of the fee-dispute litigation between Blue and the Hills.

### D. The Trial Judge Sets the Motion to Dismiss for a Hearing

In advance of the hearing on his motion, Hill served subpoenas on various individuals from the DA's office, including Watkins, Moore, Martin, and Strittmatter. He also served subpoenas on Blue, Malouf, and Charla Aldous, who was Blue's other co-counsel representing the Hills in the trust litigation. The State responded with motions to quash the subpoenas, raising procedural objections and arguing, among other things, that Hill was not entitled to seek information from the individuals because Hill's motion to quash and dismiss the indictments was invalid. The State argued that Hill's motion did not allege (1) that Watkins placed Hill in an arbitrary classification in determining whether to indict him, (2) any cognizable retaliation by Watkins, or (3) any alleged exercise of Hill's legal rights. The State also stressed that Hill did

not "even allege a lack of objective basis to indict." The State maintained that because these infirmities were fatal to Hill's motion to quash and dismiss the indictments, the State could not be burdened to comply with Hill's subpoenas.

### E. The Trial Judge Grants Hill an Evidentiary Hearing

The trial judge heard argument on Hill's motion on February 14, 2013. Although the judge stated that she did not "understand how [Hill was] gonna get there" based on the type of evidence Hill explained would be "elicit[ed]" and would "come out" in the examinations of Watkins and Blue, she granted Hill the "right to have a hearing to try to prove to the Court that this case was handled differently from any other case" that would come before the DA. The judge also determined that Hill presented prima facie evidence of his claims and that he had a "right to make inquiries" to "make [his] case."[2]

The State asked the judge for time to appeal the ruling, arguing that Hill was not entitled to a hearing at this point because he failed to establish a prima facie case for his constitutional claims. The State further objected to the hearing on the basis that Hill was trying to develop evidence that he did not have. The judge overruled the State's objections. The State also sought mandamus relief from this Court and a stay of the hearing from the Texas Court of Criminal Appeals. In its mandamus petition, the State complained, among other things, about the judge's finding that Hill established a prima facie case.

The trial judge conducted an evidentiary hearing related to Hill's motion to quash and dismiss the indictments while the State's requests for relief were pending. On March 7, 2013, the judge signed the order dismissing the indictments with prejudice on the basis that Hill had been denied "his right to a full and fair hearing on his motion" due to Watkins's refusal to testify

---

[2] At the time she made this determination, the judge had Hill's motion plus the attachments to his motion, the State's opposition to Hill's motion, which included various attachments and the affidavits of Strittmatter and Martin, and Hill's brief in reply. The judge also had the various motions to quash the subpoenas served by Hill, Hill's opposition to those motions, and an affidavit, dated February 12, 2013, filed by Blue in support of her motion for protective order regarding the subpoena to appear at the hearing.

at the hearing.  We ultimately dismissed the State's petition for writ of mandamus as moot on April 2, 2013.[3]

## II.

The State's first two issues relate to the trial judge's decision to hold an evidentiary hearing.  While we ordinarily defer to a trial judge's decision to hold an evidentiary hearing,[4] that deference is tempered by the legal principles and standards governing evidentiary hearings as outlined below.  *See, e.g.*, *United States v. Webster*, 162 F.3d 308, 334 (5th Cir. 1998) (defendant "not automatically entitled to an evidentiary hearing to make the required showing").

Generally, a trial judge has only limited authority to dismiss a case without the State's consent, such as to remedy a constitutional violation.  *State v. Mungia*, 119 S.W.3d 814, 816–17 (Tex. Crim. App. 2003).  And while a trial judge may dismiss an indictment where constitutional protections are not observed, "the dismissal of an indictment is 'a drastic measure only to be used in the most extraordinary circumstances.'"  *Id.* at 817 (quoting *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)).

A trial judge's limited authority to dismiss an indictment stems in part from the fact that the decision of whether to prosecute is a core executive constitutional function.  *United States v. Armstrong*, 517 U.S. 456, 464–65 (1996).  Because this power is within the province of the State, the State enjoys considerable discretion in deciding whether or not to prosecute and what charge to file or bring to the grand jury.  *Id.* at 464 ("In the ordinary case, 'so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests

---

[3] *See In re Watkins*, Nos. 05-13-00298-CV, 05-13-00299-CV, 05-13-00300-CV, 05-13-00301-CV, 05-13-00302-CV, 2013 WL 1363766, at *1 (Tex. App.—Dallas Apr. 2, 2013, orig. proceeding) (mem. op.).

[4] A judge's decision to hold an evidentiary hearing is reviewed for an abuse of discretion.  *See* TEX. CODE CRIM. PROC. ANN. art. 28.01, § 1(2) (West 2006); *see also id.* art. 27.02(1).

entirely in his discretion.'") (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) (recognizing that "the decision to prosecute is particularly ill-suited to judicial review"); *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). As a result of that discretion, our consideration of Hill's claims begins with a "presumption of regularity." *Armstrong*, 517 U.S. at 464 (courts presume prosecutors have "properly discharged their official duties"). That means we presume the State exercised its prosecutorial responsibilities in good faith and in compliance with the Constitution. *Id.* at 465–66; *Neal*, 150 S.W.3d at 173. The burden on the defendant to show that a particular prosecutorial decision was predicated on constitutionally impermissible grounds is high, requiring him to prove his claim with "clear evidence." *Armstrong*, 517 U.S. at 465; *Webster*, 162 F.3d at 334; *see also Garcia v. State*, 172 S.W.3d 270, 274 (Tex. App.—El Paso 2005, no pet.) (stating that an appellant "claiming selective prosecution must come forth with 'exceptionally clear evidence' that the prosecution was initiated for an improper reason").

The significance of the presumption courts afford prosecutors carries over to a defendant's request for an evidentiary hearing or discovery. *See Webster*, 162 F.3d at 334 ("A defendant is not automatically entitled to an evidentiary hearing to make the required showing."); *see also Armstrong*, 517 U.S. at 464 (noting that because prosecutors are afforded a "background presumption," the necessary showing "to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims"). That is, in light of the presumption of prosecutorial regularity, a defendant who claims his constitutional rights were violated by some form of prosecutorial misconduct must make out a prima facie case of his claims *before* he is entitled to an evidentiary hearing or discovery. *See In re United States*, 397 F.3d 274, 284 (5th Cir. 2005); *Webster*, 162 F.3d at 334. To do this, a defendant must "present facts 'sufficient to create a reasonable doubt about the constitutionality of [his] prosecution' . . . ." *Webster*, 162 F.3d at 334

–10–

(quoting *United States v. Jennings*, 724 F.2d 436, 445–46 (5th Cir. 1984)).  The "facts" required to cast doubt about the constitutionality of the prosecution and to rebut the presumption the State acted in good faith such that a person is entitled to an evidentiary hearing (or even discovery) must be more than allegations.  *See Jennings*, 724 F.2d at 445–46 (motion containing broad, generalized allegations did not offer facts to the court to warrant evidentiary hearing); *see also Wade v. United States*, 504 U.S. 181, 186 (1992) (stating that "generalized allegations of improper motive" are not enough to entitle a defendant to a remedy, discovery, or evidentiary hearing); *United States v. Sanchez*, 517 F.3d 651, 671 (2d Cir. 2008) ("Generalized allegations of improper motive do not disturb the presumption of regularity.").  Rather, a defendant's factual allegations must be accompanied by *evidence* that tends to establish his constitutional claims.  *See Jennings*, 724 F.2d at 445–46 (after reviewing affidavit and statement offered in support of motion to quash, court unable to conclude Jennings presented facts sufficient to create reasonable doubt about the selectivity of his prosecution).  Indeed, the standard for obtaining discovery on claims like selective or vindictive prosecution requires "some evidence tending to show the existence of the essential elements" of the claimed violations.  *Armstrong*, 517 U.S. at 468; *see also In re United States*, 397 F.3d at 284 (prima facie case "requires the criminal defendant to *bring forward some evidence*") (emphasis added).  This standard is "rigorous" and complements the "rigorous standard" for proving constitutional violations in the decision to prosecute.  *Armstrong*, 517 U.S. at 468.

## III.

In its first issue, the State complains about the documents Hill proffered with his motion.  The State argues that Hill needed to present evidence to support his claims before he was entitled to an evidentiary hearing and, because Hill "simply made unsworn allegations" in his motion and "attached a stack of unauthenticated documents" as exhibits, he basically provided no evidence

to support his claims. The State explains that, under *Armstrong*, the judge had to presume that Watkins acted in good faith until Hill presented clear evidence to the contrary and the presentation of such evidence was a condition that must be met before Hill was entitled to an evidentiary hearing. The State points out that even the trial judge advised Hill that the "unauthenticated, un-introduced documents attached to his motion" were not evidence.[5] Hill responds that the State did not preserve its complaint that Hill's attachments to his motion suffered from authentication or hearsay problems because the State did not object on those bases in the trial court. Hill also asserts the State stipulated to the authenticity and admissibility of the evidence attached to the motion at the March 7 evidentiary hearing.

While we are troubled by the unsworn allegations in and authenticity of the documents attached to Hill's motion,[6] we need not resolve whether the State preserved its complaint about these documents[7] because regardless of the contentions the State raised in its first issue, we conclude Hill did not meet the standard required to warrant an evidentiary hearing even when we consider the documents attached to Hill's motion. Before Hill is entitled to an evidentiary hearing, he must make a prima facie showing for his alleged constitutional claims with evidence capable of dispelling the presumption that the prosecution of him was in good faith and in compliance with the Constitution. *See Armstrong*, 517 U.S. at 465; *In re United States*, 397 F.3d at 284. Hill's failure to do so means the trial judge erred in granting Hill an evidentiary hearing, which resulted in the dismissal of the indictments. This is the State's second issue.

---

[5] The judge's statement was made at a hearing conducted on March 4, 2013. Specifically, the judge alerted Hill's defense counsel that the "exhibits on [Hill's] motions [were] not evidence."

[6] In our view, the evidence accompanying a motion alleging prosecutorial misconduct must be competent evidence; the evidence must be properly authenticated and in an otherwise admissible format. Affidavits or sworn or other reliable witness statements are appropriate to establish a fact.

[7] The State argues it had no reason to object before the commencement of the hearing because Hill had not yet offered the documents attached to his motion as evidence.

**IV.**

This case came to us with a large record. But in deciding the issue of whether Hill was entitled to an evidentiary hearing to try to prove his allegations, there is no need to look beyond what the trial judge had in her hands at the time she decided that Hill met his initial burden of proof related to his constitutional claims. In particular, we consider Hill's motion and the attached exhibits to determine whether he made a prima facie case for each of his claims such that he was entitled to an evidentiary hearing.

In his motion to quash and dismiss the indictments, Hill claimed he was deprived of his right to a disinterested prosecutor and that he had been vindictively and selectively prosecuted. As proof of the alleged constitutional violations, Hill emphasized the following in his motion: (1) political contributions from a lawyer associated with Hill's father in the months after the February 2010 complaint and five months before the indictments were returned and a donation by Blue less than a month before the indictments were returned; (2) that Blue hosted a fundraiser for Watkins in the month before the indictments were returned; (3) the "unusual" nature of the charges against him; (4) the lack of notice to him that indictments were being considered; (5) the suspect timing of the indictments in that they were returned just before the fee-dispute trial involving Blue, which Hill claimed prevented him and his wife from testifying in that trial; (6) the "heated exchange" of communications with Watkins and his office in the weeks leading up to the Hills' indictments and ending after the indictments were returned; (7) Blue's discussion about indictments with Watkins in the time before they were returned; (8) Blue's comment made in her deposition that she would have no reason to discuss indictments with Watkins after they were returned; (9) Blue's close relationship with Watkins; (10) defense counsel's meeting with Smith about the charges; and (11) the fact that charges against Hill's wife were dismissed. Hill contends on appeal that these facts cast doubt on the constitutionality of the prosecution and not

–13–

only entitle him to an evidentiary hearing but also establish a prima facie showing of prosecutorial misconduct.

## A. Hill's Allegation He Was Deprived of the Right to a Disinterested Prosecutor

Hill first alleged in his motion that the indictments should be dismissed because he was deprived of the right to a disinterested prosecutor. The absence of an impartial and disinterested prosecutor can violate a defendant's due process rights. *In re Guerra*, 235 S.W.3d 392, 429 (Tex. App.—Corpus Christi 2007, orig. proceeding). "Partiality" in this context is like "a conflict of interest in the sense that the prosecutor has a personal interest or stake in the outcome of the criminal prosecution." *Id.* at 430. It also refers to any interest that conflicts with the prosecutor's duty to seek justice. *Id.* Thus, the due process rights of a defendant are violated "when a prosecuting attorney who has a conflict of interest relevant to the defendant's case prosecutes the defendant." *Id.* at 429. The "mere potential or perceived conflict of interest" is not sufficient to establish a due process violation. *Id.* at 430. Similarly, mere allegations of wrongdoing do not suffice. *Id.*

Hill alleged in his motion that the influence exercised upon Watkins by Hill's father, Lynn, and Blue deprived him of due process. He explained that Watkins had "a financial stake in the prosecution of the Hills" because indicting them benefited Blue (who was involved in a dispute with the Hills over attorneys' fees) and Tillotson (who also was a major campaign contributor), "which in turn benefited" Watkins. Hill claimed Blue's influence and involvement with the indictment process were demonstrated by Blue's two telephone conversations with Watkins before the indictments were returned and the pattern of phone calls and text messages exchanged between Blue and Watkins (and others in the DA's office) in the weeks before the indictments were returned.

We disagree with Hill's assertion that his motion and attachments demonstrate that Watkins's decision to prosecute Hill was influenced by any wrongdoing. The documents submitted with Hill's motion show that Blue represented Watkins on a pro bono matter and that she is friends with him and others in the DA's office. She testified in her deposition that she received a phone call from Watkins "shortly before the indictments came down." Her recollection of the phone call was that Watkins said "one or two sentences about the indictments," something like, "there could be an indictment or are you still interested in the indictments." She testified that she responded by telling Watkins that she did not represent the Hills and "it would be inappropriate for [her] to talk about it." Blue added that she later received another phone call from Watkins during which Watkins "mentioned the Hills." Blue reminded Watkins that she no longer represented the Hills so there was nothing she could talk about.[8] Her recollection of her response to Watkins about the indictments was affirmed by Malouf, who testified in his deposition that he overheard Blue tell Watkins that she no longer represented the Hills, so she could not talk to him about the investigation of the Hills.

Hill maintained that Blue's testimony about the two phone calls was not credible and reflected improper communications between Watkins and his friend and political contributor. He further claimed there could be "no benign explanation" for Watkins to call Blue about the indictments or the Hills during a time when Blue was involved in a fee dispute with them. But before testifying about the phone calls, Blue also described a meeting she had with Assistant District Attorney Terri Moore when she still represented the Hills. Blue said she discussed the

[8] In the February 12, 2013 affidavit Blue filed in support of her motion for protective order regarding the subpoena to appear at the hearing, Blue testified that after she no longer represented the Hills, she received two phone calls from Watkins wherein "at the very beginning of the conversations, District Attorney Watkins used the word 'Hill' or "Hills" (and in one of the conversations I recall he also used the word 'indictment' or 'indict')." She testified that "[o]n both occasions, [she] immediately stopped the conversation and told Mr. Watkins that [she] no longer represented [Hill or his wife] and could not talk to Mr. Watkins about the Hills."

potential for charges against the Hills with Moore and explained that she told Moore that this "was a family fight."[9]  Hill's motion does not mention this meeting.

Other than the two phones calls testified to by Blue, Hill presented nothing to show the substance of the text messages or other phone calls exchanged between Blue and Watkins in the time leading up to the indictments.  Hill's arguments about their content amount to speculation. Absent evidence regarding the substances of the communications, Hill's characterization about the timing of the text messages and phone calls does not necessarily suggest the communications were related to the indictments as opposed to other legitimate purposes.  Again, Hill emphasized throughout his motion that Blue had a personal and professional relationship with Watkins for many years.  It is possible their communications encompassed a multitude of topics.  Because of that relationship, contact with Watkins cannot be considered unusual.[10]

Similarly, other than Hill's speculation that the timing of Blue's campaign donations and fundraiser were suspect, Hill did not present any evidence that Blue's status as a political patron related to the indictments.  As Hill pointed out in his motion, Blue had been a contributor and supporter of Watkins since 2007, well before her fee dispute with Hill.  Hill also emphasized that Watkins announced his re-election campaign in Blue's house in November 2009.  But this merely supports the fact that Blue had a long-term relationship with Watkins, not that Blue's political contributions related to the indictments.  In fact, Blue's representation of the Hills in the trust litigation did not begin until November 2009.  Further, Hill's accusation that Tillotson's

---

[9] Blue testified to her meeting with Moore in her February 12 affidavit.  Specifically, Blue testified that in the meeting with Moore, she recommended that the Hills not be indicted.  She described Moore as "non-committal" and testified that Moore provided no response to the recommendation.  Blue also testified that she first learned the DA's office was investigating the Hills by reading a May 2010 *D Magazine* article. She said she later learned about the formal complaint sent by Lynn in February 2010 and clarified that she did not participate in preparing that complaint.

[10] Hill also claimed that the communications ceased "almost completely in the days and weeks" after the indictments were publicly announced.  But the phone records attached to Hill's motion end on April 30, 2011.  Hill does not provide any records after that date to support this allegation.

campaign contributions in 2010 influenced Watkins's decision to prosecute Hill is not supported by any evidence.

## B. Hill's Allegation He Was Vindictively Prosecuted

Hill also sought dismissal of the indictments on the ground that the prosecution was initiated in retaliation for having exercised his right to petition the civil court in two cases: the trust litigation and the fee-dispute trial. "Prosecutorial vindictiveness" refers to a situation in which the State acts against a defendant by bringing criminal charges "in retaliation for the defendant's exercise of his legal rights." *Neal*, 150 S.W.3d at 173. A prosecutorial action is vindictive if it is designed to "penalize a defendant for invoking legally protected rights." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987).

A defendant may demonstrate prosecutorial vindictiveness by showing actual vindictiveness, which requires him to present objective evidence of the violation. *United States v. Goodwin*, 457 U.S. 368, 380–81 & n.19 (1982); *Neal*, 150 S.W.3d at 173; *see also United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008). Or, in certain circumstances, the defendant may rely on a presumption of vindictiveness, which requires him to present facts showing the realistic likelihood of vindictiveness, forcing the State to present objective evidence justifying the prosecutorial action. *Meyer*, 810 F.2d at 1245; *see also Neal*, 150 S.W.3d at 173; *United States v. Cooper*, 461 F.3d 850, 856 (7th Cir. 2006) (To create doubt regarding prosecutorial motivations before trial, the defendant "must affirmatively show through objective evidence that the prosecutorial conduct at issue was motivated by some form of prosecutorial animus, such as a personal stake in the outcome of the case or an attempt to seek self-vindication.").[11]

---

[11] The parties dispute whether the presumption of vindictiveness applies at this stage in the case; they argue there is a distinction drawn between pretrial and post-trial prosecutorial vindictiveness. We will assume without deciding that it does because Hill did not provide any direct proof of vindictiveness or sufficient circumstantial proof to warrant a presumption of vindictiveness. "There is no presumption of vindictiveness

In his motion, Hill argued that for a claim for vindictive prosecution, he was required to show that (1) "the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse'" and (2) "he would not have been prosecuted except for the animus." *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999). Hill alleged that the decision to prosecute him was prompted by his father's anger after receiving an adverse ruling in the trust litigation and by the animus of Blue in the fee-dispute litigation. He also maintained that the

> timing, circumstances, and unusual if not unprecedented nature of the Hill indictments make abundantly clear that the real motivation of these indictments was to benefit [Watkins's] prolific campaign contributor [his father's lawyer's law partner], and to assist [Watkins's] friend and benefactor, [Blue] by impairing the Hills' ability to contest [Blue's] enormous fee claims.

He claimed such animus was demonstrated by the improprieties inherent in the indictments (such as his denial of any pre-indictment notice or opportunity to be heard by the grand jury), the "unprecedented nature" of the charges, and Hill's belief that the DA's office did not conduct a thorough investigation before indicting him.

That the decision to prosecute was prompted by his father's anger is not supported by any evidence in the record. Hill's argument speculates as to the motivations of his father's attorney in sending the DA's office the February 2010 complaint and of the timing of the law partner's donations to Watkins's campaign, but this speculation is not evidence of genuine animus. *See, e.g.*, *United States v. Bucci*, 582 F.3d 108, 114 (1st Cir. 2009) (noting that "evidence of suspicious timing alone does not indicate prosecutorial animus") (quoting *Cooper*, 461 F.3d at

---

if in the context of the entire proceedings 'any objective event or combination of events in those proceedings should indicate to a reasonable minded defendant that the prosecutor's decision . . . was motivated by some purpose other than a vindictive desire to deter or punish . . . .'" *Saltzman*, 537 F.3d at 360 (quoting *United States v. Wells*, 262 F.3d 455, 466–67 (5th Cir. 2001)). Again, even if the defendant establishes a "realistic likelihood of vindictiveness," the State "still has an opportunity to proffer legitimate, objective reasons for its conduct." *Id.* (citing *Goodwin*, 457 U.S. at 374).

856). Nor does it support an allegation that he "would not have been prosecuted except for the animus." *Koh*, 199 F.3d at 640.

In addition, Hill proffered no actual evidence related to improprieties inherent in the indictments, his claim about the "unusual" or "unprecedented" nature of the charges, or his belief that the indictments were not thoroughly investigated. Hill's only attempt at proving he was denied notice of the possible charges and access to the grand jury was by attaching an unauthenticated 2007 article that described the DA's office having such a policy. Hill did not present any evidence that such notice and access was actually the policy of the DA's office or its specialized crime division at the time or that notice or that grand jury access had been provided to other defendants but denied as to him. Martin, a specialized crime prosecutor, stated in her affidavit that her regular practice did not include providing notice to an accused of a contemplated charge. Further, the record showed that the Hills knew about the potential for indictments. In May 2010, while Blue still represented the Hills in the trust litigation, *D Magazine* published an article questioning whether the DA's office would go after the Hills for mortgage fraud.[12] Blue testified in her deposition that after she learned about the potential investigation, she met with Moore and recommended that the Hills not be indicted.

Although Hill alleged that Smith communicated her "concerns" about the charges during a conversation with his counsel, he provided no evidence to show that any statements were actually made by Smith. Moreover, other evidence in the record shows that the DA's office did, in fact, investigate the allegations. For example, in seeking a continuance in the fee-dispute litigation after the indictments were returned, counsel for the Hills stated that the DA's office was producing "thousands of pages" of criminal discovery that needed review before the Hills

---

[12] In the February 14, 2013 hearing, counsel for the Hills told the trial judge that Hill had been aware that a case had been presented to the DA's office but that Hill was unaware that the case was being taken seriously.

could assess their position in the fee-dispute trial. In her affidavit filed with the State's response to Hill's motion, Martin also attested to the scope of her investigation, which spanned several months and included receiving documents from various sources and talking to the bank's legal counsel.

Finally, Hill claimed that the DA's office was motivated to bring charges to impair the Hills' ability to contest Blue's fee claims in the fee-dispute litigation as a way to curry favor with a political contributor. Yet the record shows that the federal judge in the fee-dispute litigation would not have been asked to draw a negative inference to the extent that the Hills were forced to invoke their Fifth Amendment privilege. The federal judge also recognized that because extensive discovery including depositions had already occurred before the indictments were returned, the "horse [was] already out of the barn."

In short, other than Hill's belief that the DA's office served as a "stalking horse" for others, Hill presented no evidence to support his conclusion and could only speculate as to the nature of the mortgage-fraud charges and how the charges were investigated within the DA's office. Hill's speculation is not evidence of vindictive prosecution. *Cf. Bucci*, 582 F.3d at 114 ("To obtain discovery, [the defendant] must do more than simply 'identify a potential motive for prosecutorial animus'"; "[h]e must connect any vindictive animus to those making the challenged charging decisions in his case.") (quoting *United States v. Sanders*, 211 F.3d 711, 718 (2d Cir. 2000)).

## C. Hill's Allegation He Was Selectively Prosecuted

Hill's third allegation was that the indictments should be dismissed because he was denied equal protection under the law when he was prosecuted under circumstances that do not normally lead to criminal prosecution and when he was denied the benefit of pre-indictment notice.

A selective prosecution claim is an assertion that the State brought charges "for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463–64. A selective-prosecution claim draws on "ordinary equal protection standards" and requires a defendant to prove the existence of purposeful discrimination. *Id.* at 465; *see also Matney v. State*, 99 S.W.3d 626, 628 (Tex. App.—Houston [1st Dist.] 2002, no pet.). To make out a prima facie case, the defendant must first show that he has been singled out for prosecution while others similarly situated and committing the same acts have not been prosecuted. *Matney*, 99 S.W.3d at 628. He must also show that the State's discriminatory selection of him for prosecution was invidious or in bad faith. *Id.*; *see also Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim. App. 1980).

Hill's allegations fail to present a prima facie case that he was selectively prosecuted. He did not present any evidence that he was singled out for prosecution under circumstances that do not normally lead to prosecution. Nor did he offer any evidence that he was treated differently because he was denied pre-indictment notice of the contemplated charges and the opportunity for his lawyer to present his views to the grand jury in contravention of what Hill claimed is the DA's office's "longstanding practice." His allegations about the DA's office's motivations for prosecuting him amount to speculation with no credible evidence to support his theories.

## V.

There is an evidentiary threshold that must be met by the defendant before he is entitled to an evidentiary hearing on his claims that he was prosecuted in violation of his constitutional rights. *See In re United States*, 397 F.3d at 284. That burden requires a defendant to do more than make unsupported allegations or speculative inferences about an improper motive. *See Jennings*, 724 F.2d at 445–46. Stated another way, before a defendant gets to make inquiries into the State's decision to prosecute, the defendant must support his allegations with evidence that tends to establish his constitutional claims. *See id.*; *see also Armstrong*, 517 U.S. at 468.

The record before us shows that the trial judge granted Hill an evidentiary hearing so that Hill could "try to prove" that he was prosecuted in violation of his constitutional rights. By conducting this evidentiary hearing before Hill met the evidentiary threshold, the judge turned the standard around and put the burden on the State to show why Watkins was not operating under a conflict of interest and how the prosecution of Hill was not vindictive or selective.

We conclude Hill did not make the proper showing sufficient to establish a prima face case of his alleged constitutional violations. Because Hill did not meet his burden, we also conclude the trial judge erred in conducting a hearing on Hill's motion to dismiss. Consequently, the charges against Hill should not have been dismissed. We resolve the State's second issue in its favor. Based on our resolution of the State's second issue, we need not address the State's remaining issues. TEX. R. APP. P. 47.1.

We vacate the trial judge's order dismissing the indictments in these cases and remand the cases to the trial court with instructions to reinstate the indictments against Hill.

/Ada Brown/
ADA BROWN
JUSTICE

Bridges, J., dissenting.

Do Not Publish
TEX. R. APP. P. 47.

130421F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00421-CR       V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00180-Q.
Opinion delivered by Justice Brown.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, we **VACATE** the trial court's March 7, 2013 order granting Albert G. Hill III's motion to dismiss. We **REMAND** this cause to the trial court to reinstate the indictment in trial court cause number F11-00180-Q against Albert G. Hill III.

Judgment entered this 29th day of December, 2014.



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00423-CR     V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00182-Q.
Opinion delivered by Justice Brown.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, we **VACATE** the trial court's March 7, 2013 order granting Albert G. Hill III's motion to dismiss. We **REMAND** this cause to the trial court to reinstate the indictment in trial court cause number F11-00182-Q against Albert G. Hill III.

Judgment entered this 29th day of December, 2014.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00424-CR      V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00183-Q.
Opinion delivered by Justice Brown.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, we **VACATE** the trial court's March 7, 2013 order granting Albert G. Hill III's motion to dismiss. We **REMAND** this cause to the trial court to reinstate the indictment in trial court cause number F11-00183-Q against Albert G. Hill III.

Judgment entered this 29th day of December, 2014.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00425-CR          V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00191-Q.
Opinion delivered by Justice Brown.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, we **VACATE** the trial court's March 7, 2013 order granting Albert G. Hill III's motion to dismiss. We **REMAND** this cause to the trial court to reinstate the indictment in trial court cause number F11-00191-Q against Albert G. Hill III.

Judgment entered this 29th day of December, 2014.